*In re* GLENN R. CLICK, a Person Found Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Glenn R. Click, Respondent-Appellant).

Fourth District   No. 4—89—0671

Opinion filed April 9, 1990.

Thomas J. Carlisle and Jeff Plesko, both of Guardianship & Advocacy Commission, of Springfield, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and Gwendolyn W. Klingler, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SPITZ delivered the opinion of the court:

Following a hearing, the circuit court of Macon County found respondent to be a person subject to involuntary admission because of his mental illness and the reasonable expectation that he would seriously harm himself or others in the near future. Respondent appeals the court's order to involuntarily commit him to the Illinois Department of Mental Health and we reverse.

On August 17, 1989, a petition seeking the involuntary admission of respondent, Glenn R. Click, to an Illinois mental health facility by court order, was filed in the circuit court of Macon County. The petition, filed by Lieutenant John Denning of the Macon County sheriff's

department, alleged that respondent was a person subject to involuntary hospitalization, pursuant to the provisions of the Mental Health and Developmental Disabilities Code (Code) (Ill. Rev. Stat. 1987, ch. 91½, pars. 3—701, 3—601, 4—401). According to the petition, because of mental illness, respondent was reasonably expected to seriously harm someone in the near future. As evidence, the petition alleged that respondent used profanity, spoke loudly, was disrespectful in a prior court proceeding, and was heard to say that he wanted to kill a judge. The court set a hearing date of August 22, 1989.

At the August 22, 1989, hearing, respondent's court-appointed counsel, David Massey, informed the court of respondent's desire to proceed without his assistance. The following exchange occurred:

"THE COURT: Mr. Click, is that correct, you do not wish to be represented by Mr. Massey as your appointed counsel?

RESPONDENT: That's correct, sir.

THE COURT: That's your free wish to do, is that correct?

RESPONDENT: I believe it is.

THE COURT: You choose to represent yourself?

RESPONDENT: I choose to.

THE COURT: Well, this is what I will do. I will find you knowingly waive your right to counsel. I will allow you to preceed [*sic*] as your counsel; however I will order Mr. Massey to remain there at the counsel table and that if you have any questions you can ask him."

After this, the court told respondent that he could ask the public defender questions if he wished, and then asked respondent if he objected to the court receiving the comprehensive examination and social investigation report into evidence. Respondent did not know if he would object, as he had never seen the report. However, respondent did have a question:

"RESPONDENT: Actually, I'd like to back track. I don't know what he [the judge] just said. I heard the question. I don't know what he said. Whether he allowed you [Massey] to remain here to answer my questions.

THE COURT: I said, if you have any questions you can ask Mr. Massey. If you don't want to ask him any questions, you don't have to. He is not your attorney any more. You are representing yourself, but he is there to aid you if you have any questions.

RESPONDENT: That's all you said. You said about 50 more words than that the last time you spoke. That's what I didn't comprehend about somebody representing himself in Anna and

somebody representing himself as me. I didn't comprehend that.

THE COURT: That's not my problem, sir. I'm going to show the Comprehensive—don't talk any more until I talk to you. I don't want you to speak out of turn. When I talk I want you to be quiet. You will have a chance to talk, but I'm not having you interrupt me and you are not going to ruin these proceedings. I'm in control and we're not going to have any problem here today."

The court then received the comprehensive and social investigation report into evidence and asked the State if it wished to make an opening statement. The State declined and called its first witness, Lieutenant Denning. Denning testified that he observed respondent during court proceedings on two separate occasions. On August 9, 1989, Denning saw respondent come into court on a traffic case. The court dismissed the traffic charges against respondent, causing respondent to become very upset. Respondent wanted to continue with the case, but left the courtroom at the judge's request. Respondent returned to the courtroom a few minutes later, however, and mentioned that there was a crack in the table that had not been there a few minutes earlier.

The next day, August 10, 1989, Denning once again observed respondent in court. According to Denning, respondent challenged the presiding judge's authority to hear the case, and used profanity in the courtroom against the judge's specific orders. The court found respondent in contempt for these actions. Respondent also informed the judge that everything was in the judge's hands, whether everyone lived, died, or was terminated (or liquidated).

Denning further testified that prior to entering the courtroom on August 10, respondent refused to enter because he felt the air would not be right inside the courtroom, and feared he would drop dead if the air was not right. Once inside the courtroom, defendant left and reentered several times. Denning finally noted that respondent at times stands up, flails his arms about and raises his voice and approaches the person to whom he is talking.

When Denning finished testifying, the court told him to step down and asked the State to call its next witness. The court did not ask respondent if he wished to cross-examine Denning. Neither respondent nor the public defender objected to this procedure.

Next to testify was Norma Mason, a psychiatrist who observed respondent at the Adolf Meyer Mental Health and Development Center (Meyer) in Decatur, Illinois. Respondent told Dr. Mason during their

first session that judges need to be in prison, for they were the guilty ones, not he. Respondent also asked Mason how she would like it if he hit her on the side of her head. Dr. Mason testified that she believed respondent would have hit her if security personnel had not been present.

The second time Mason interviewed respondent, she wanted to discuss a recent incident in which respondent pushed a nurse down to the floor, injuring the nurse and breaking her glasses. Respondent felt justified in his action, for he thought the nurse treated him unfairly, pulling his hair and directing him into the quiet room.

Dr. Mason further testified that respondent has a history of several hospitalizations, the most recent of which was a 13-month stay at the Chester Mental Health Center. Respondent was released from the Chester center in 1988. It was Dr. Mason's diagnosis that respondent suffers from schizophrenia, but fails to realize that he is suffering from a mental illness. Respondent improves somewhat when he takes medication, but does not particularly like to take it.

Finally, it was Dr. Mason's opinion that respondent could be expected to inflict serious physical harm upon himself and others. Respondent is extremely suspicious of staff and surroundings at the center and had inflicted serious physical harm to the nurse and threatened Dr. Mason on two occasions. Dr. Mason recommended that respondent be committed to the Department of Mental Health in an environment more secure than the Meyer center.

After Dr. Mason finished testifying, the court told her to step down and asked the State if any other evidence would be presented. The State had no further evidence. Once again, the court did not ask respondent whether he wished to cross-examine Dr. Mason, and neither respondent nor Massey objected to the procedure.

The State rested its case, and the court asked respondent if he wished to testify. Respondent testified and denied that he was subject to involuntary commitment. Respondent's testimony rambles for 2½ pages of record and, in it, respondent made the following observations: (1) during Dr. Mason's testimony, he measured to see whether she could hear his thoughts; (2) Dr. Mason failed to perceive that she could hear his thoughts; (3) the staff at the Meyer center attempted to make respondent believe he was God; (4) the law enforcement agency in Decatur, Illinois, is a gas chamber; and (5) respondent had survived getting gassed several times.

The court interrupted respondent's testimony and asked if he wished to present any other witnesses. Respondent did have someone from "Unit E" who would testify, but the court disallowed it, as that

person was not present. The court then asked the State for a closing argument and thereafter found that the State had proved the allegations by clear and convincing evidence. The court ordered respondent involuntarily admitted, and stated:

"It is ordered he be hospitalized in the Department of Mental Health and Developmental Disabilities. I will specifically put in the order that this includes the Chester Institution because I do not believe Adolf Meyer is strong enough to hold this individual."

Following the court's order, the public defender notified the court that respondent had asked him to appeal the decision. The court later mentioned the Chester facility in its order for treatment of discharge and in a typed entry on the record sheet.

On appeal, respondent argues that the trial court erred (1) in failing to exercise the proper discretion when it allowed him to represent himself at his own mental health hearing; (2) in denying him the opportunity to cross-examine the State's witnesses; (3) in finding clear and convincing evidence that he was currently a danger to himself or others; and (4) in noting the Chester facility in its orders subjecting him to involuntary commitment. We agree with respondent as to his first two contentions and accordingly reverse the trial court.

Respondent first argues that the trial court failed to exercise proper discretion in allowing him to proceed *pro se* at his own mental health hearing. The State replies that there was no error, as respondent never waived his right to counsel and had a court-appointed attorney with him throughout the hearing.

■■ The Code provides that every respondent alleged to be subject to involuntary admission shall be represented by counsel. (Ill. Rev. Stat. 1987, ch. 91½, par. 3—805.) The respondent may, however, ask the court to waive this statutory right. The right to counsel in such a mental health hearing is mandatory, but a waiver of the right is within the court's discretion. *City of Chicago v. Groffman* (1976), 42 Ill. App. 3d 139, 354 N.E.2d 572.

■■ A respondent who wishes to represent himself at his own mental health hearing must first confer with counsel, and then request to proceed *pro se*. To grant such request, the court must be satisfied that respondent has the capacity to make an informed waiver of his right to counsel. (Ill. Rev. Stat. 1987, ch. 91½, par. 3—805.) At issue here is whether respondent waived the right to counsel and, if so, whether the court abused its discretion in finding respondent to have the capacity to make an informed waiver.

The State argues that respondent never waived his right to coun-

sel because his court-appointed attorney remained with him throughout the hearing. The State relies on a procedure used by a First District Appellate Court in *In re Tuntland* (1979), 71 Ill. App. 3d 523, 390 N.E.2d 11. *Tuntland* is much like the present case in that the respondent wished to proceed *pro se* at his mental health hearing for involuntary commitment. The circuit court in *Tuntland* told the respondent that he had the right to represent himself, but that the court would also appoint a public defender to guide him. The public defender was only to guide respondent as to what he ought to do relative to objections and other matters of procedure. The respondent acknowledged that he understood this.

During the hearing, the respondent in *Tuntland* vigorously cross-examined the State's witnesses and was quick to interrupt the direct testimony of the State's witnesses with objections. Furthermore, the respondent's appointed counsel made an objection and stipulated to certain portions of evidence. The appellate court, after considering the entire record as a whole, determined that the respondent had received the effective assistance of counsel.

The State also cites the procedure used in *In re Boswell* (1978), 62 Ill. App. 3d 1033, 379 N.E.2d 658. In *Boswell,* respondent informed the court of his desire to represent himself at his hearing for involuntary commitment. However, respondent also wanted the public defender to remain at the hearing and act in a guidance capacity only. The court allowed respondent to proceed as requested. On appeal, respondent contended that he did not effectively waive his right to counsel. The appellate court disagreed and stated that respondent sought the "best of both worlds: freedom to conduct his own defense and benefit from the assistance of counsel." (*Boswell,* 62 Ill. App. 3d at 1034, 379 N.E.2d at 659.) Thus, respondent's right to counsel was never waived.

The State finally notes two criminal cases where defendants wished to represent themselves, but trial courts ordered public defenders to remain as advisors. (*People v. Bryant* (1983), 115 Ill. App. 3d 215, 450 N.E.2d 744; *People v. Smith* (1985), 133 Ill. App. 3d 574, 479 N.E.2d 24.) In both cases, the appellate courts held that defendants had not waived their right to counsel.

■ As the State points out, a number of cases have held that when a defendant proceeds to trial with the "technical assistance of counsel," he has not waived counsel and a court need not inquire as to defendant's capacity to make an informed waiver. The reason for this is that a defendant who seeks to conduct his own defense with the advice of counsel "partakes of the freedom of defending himself in

addition to the expertise of an advisor with legal training." (*People v. Hite* (1983), 115 Ill. App. 3d 66, 69, 450 N.E.2d 416, 418.) However, in certain circumstances, courts have ordered new trials or vacated judgment where defendants have conducted their own defense with a court-appointed attorney acting as standby counsel. (*People v. Derra* (1981), 92 Ill. App. 3d 1106, 416 N.E.2d 688; *People v. Brown* (1980), 80 Ill. App. 3d 616, 399 N.E.2d 1374; *In re Moore* (1978), 63 Ill. App. 3d 899, 380 N.E.2d 917.) In these cases, the participation of the public defender was minimal. *Hite*, 115 Ill. App. 3d at 70, 450 N.E.2d at 418.

In *Derra*, a fourth district opinion, a criminal defendant requested a public defender. Later, at the hearing, the defendant expressed the desire to represent himself. The court ascertained that the defendant was 18 years old, had a ninth-grade education, and understood the charges against him. The court then asked the defendant if he was aware that he might not be well equipped to proceed without an attorney. Defendant replied that he understood. The court then allowed the defendant to represent himself, but ordered the public defender to remain in an advisory capacity.

During the trial, the defendant cross-examined the arresting officer very poorly, testified very poorly, and declined to make a closing argument. The public defender remained virtually silent throughout the proceeding.

On appeal, the defendant in *Derra* claimed that he had not effectively waived counsel. The State argued, as the State in the instant case argues, that there was no waiver of counsel because the public defender was appointed in an advisory capacity. But, as this court noted, the apparent logic of the State's argument was that the defendant actually received the assistance of counsel. This court further noted that unlike other cases wherein courts have found no waiver of counsel, the defendant in *Derra* did not request the assistance of the public defender. Moreover, the public defender in *Derra* was virtually silent during the proceeding. The court concluded that respondent was not attempting to have "the best of both worlds," as the respondent in *Boswell*. Thus, although the public defender was appointed in an advisory capacity, this court held that the defendant had waived the right to counsel and had proceeded without the assistance of counsel. See also *Brown*, 80 Ill. App. 3d 616, 399 N.E.2d 1374 (inactive standby appointment did not provide defendant with adequate assistance of counsel where standby counsel remained silent during proceedings until moving for a mistrial following the State's case in chief); *Moore*, 63 Ill. App. 3d 899, 380 N.E.2d 917 (a factor in vacat-

ing judgment in a mental health hearing was that respondent did not ask for the public defender to remain and assist him).

It should also be noted that the trial court in the instant case relied on a procedure used in *People v. Hanna* (1987), 155 Ill. App. 3d 805, 508 N.E.2d 765, in ordering the public defender to remain in an advisory capacity. (*Hanna*, 155 Ill. App. 3d 805, 508 N.E.2d 765.) In *Hanna*, the defendant wished to proceed *pro se*, but the court ordered the public defender to remain in an advisory capacity. *Hanna* differs from the present case in that the defendant in *Hanna* acknowledged he understood the public defender would assist him. Moreover, both the defendant and public defender in *Hanna* were active in putting on a defense.

█▌ █ The cases cited present factors which courts have used to determine whether a defendant or respondent has waived the right to counsel and has proceeded without the assistance of counsel. These factors include (1) whether respondent asked for counsel to remain and assist him; (2) whether respondent incompetently or vigorously defended himself; and (3) whether the public defender was silent during the hearing or assisted respondent in a meaningful way. Applying these three factors to the instant case, it appears that, contrary to the State's argument, respondent did waive the right to counsel and proceeded through the hearing without the assistance of counsel. Respondent did not ask the court for the public defender's assistance, and the record shows that respondent failed to put on any defense other than a rambling oration. The record further shows that the public defender remained silent during the entire hearing, neither objecting to the court's procedure nor assisting respondent in any manner.

Statements by the trial court also reveal that respondent waived the right to counsel, most obvious of which is the court's statement: "I will find you knowingly waive your right to counsel." The court later told respondent that the public defender was no longer his attorney.

█▌ Because we find that respondent waived the right to counsel, we must determine whether the court abused its discretion in finding respondent to have the capacity to make an informed waiver of counsel pursuant to section 3—805 of the Code. In reviewing the court's decision, we are aware that because a trial court is in a better position to weigh the evidence, its determination should not be reversed unless it is manifestly erroneous. (*In re Cutsinger* (1989), 186 Ill. App. 3d 219, 542 N.E.2d 414.) However, we agree with respondent that the court abused its discretion in finding a knowing waiver of counsel.

█▌ While it is clear that the trial court found respondent to have

waived the right to counsel, the court did little to determine respondent's capacity to make such a decision. The record shows that the court's inquiry was limited to three questions, basically the same, asking respondent if he wished to represent himself. No preliminary questions were posed to respondent concerning his mental ability or intelligence, or even as to his understanding of the basic purpose of counsel. Even though respondent was confused by the court's statements concerning the waiver of counsel, the court simply repeated the procedure once, and then apparently became irritated and refused to answer any more questions. The very nature of the hearing, respondent's confusion, and respondent's actions during the hearing should have made the court question whether respondent had the capacity to make an informed waiver of counsel. We conclude he did not.

Respondent next contends that the trial court improperly denied him the opportunity to cross-examine the State's witnesses in the mental health proceeding. We agree. After each of the State's witnesses finished testifying, the State informed the court that it was through with the witness. The court subsequently thanked each witness and told him to step down. The court did not ask respondent if he wished to cross-examine either witness. Moreover, the record fails to reflect a pause in the proceedings where the court might have waited for respondent to cross-examine the witnesses.

■ Involuntary commitment hearings conducted pursuant to the provisions of the Code are subject to the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 1—101 *et seq.*). (See, *e.g.*, Ill. Rev. Stat. 1987, ch. 91½, par. 3—802 (right to jury); *In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273.) While there may be no constitutional right to cross-examine witnesses as in criminal cases, cross-examination is generally a matter of right in all cases. *Alford v. United States* (1931), 282 U.S. 687, 75 L. Ed. 624, 51 S. Ct. 218; *Grundy County National Bank v. Myre* (1975), 34 Ill. App. 3d 287, 339 N.E.2d 348.

■ A trial court has special obligations with respect to a *pro se* litigant because of such a litigant's lack of knowledge of the procedural and substantive requirements of the legal structure. (*Caruth v. Pinkney* (7th Cir. 1982), 683 F.2d 1044.) The record is clear that the court failed to assist respondent by either asking him if he wished to cross-examine the witnesses, or by waiting for respondent to cross-examine the witnesses.

We find the court's failure to even offer respondent a chance to cross-examine the State's witnesses is similar to the facts set out in *Boswell*. In *Boswell*, after the State presented its case, the trial court found the respondent in need of hospitalization. The court never

424

asked respondent if he wished to present a defense. In reversing this decision, the appellate court found that the trial court improperly denied the respondent the opportunity to present a defense. The court noted no manifestation of respondent's intent to waive the opportunity to present a defense and further noted that if respondent had visually indicated a desire not to present a defense, the trial judge should have stated for the record that respondent or his counsel did so.

The State responds by arguing that the record does not show the court prevented respondent's cross-examination of witnesses. The State contends that absent from the transcript is both the lapse of time before the court told the witnesses to step down and any nonverbal expression or gesture by respondent indicating that he did not wish to cross-examine the witnesses. The State's argument, however, fails under *Boswell*. If there was any pause, or nonverbal expression, the trial court should have noted it in the record. In attempting to distinguish *Boswell*, the State argues that the court here asked respondent if he wanted to testify or bring in any other witness. While this is true, it does not negate the fact that the court failed to offer respondent the opportunity to cross-examine the State's witnesses.

The State further contends that the decision whether to cross-examine a witness is a tactical decision (*People v. Hopkins* (1987), 160 Ill. App. 3d 967, 513 N.E.2d 1011), and that respondent's and the public defender's decision not to cross-examine the witnesses was a tactical decision. The State cites a fourth district case in which respondent's appeal claiming ineffective assistance of counsel by his attorney's failure to cross-examine the State's witness was rejected. (*In re Peterson* (1983), 113 Ill. App. 3d 77, 446 N.E.2d 565.) This court in *Peterson* found that counsel may have decided that because of the weight of evidence presented, cross-examination would only strengthen the State's case. *Peterson* is readily distinguishable from the instant case, however, as the respondent in *Peterson* had the benefit of counsel to make such a decision.

The State's argument rests upon the assumption that respondent did not waive the right to counsel and that he was in fact assisted by counsel during the hearing. As noted above, however, although respondent did waive the right to counsel, he did not make a knowing waiver, and he did not have the assistance of counsel during the hearing. It also seems clear from the record, and from *Boswell*, that there is no indication respondent waived the right to cross-examine the State's witnesses, or even knew that he could have cross-examined

the witnesses. We therefore conclude the court improperly denied respondent the opportunity to cross-examine the State's witnesses.

Because we reverse on the first two issues, we need not fully discuss respondent's remaining contentions in detail. We do, however, note that the trial court correctly found clear and convincing evidence that defendant was currently a danger to himself and others, and did not err in mentioning the Chester facility on its orders. Accordingly, the Macon County circuit court is reversed and cause remanded.

Reversed and remanded.

LUND and McCULLOUGH, JJ., concur.