*In re* LAWRENCE S., Alleged to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Lawrence S., Respondent-Appellant).

Second District   No. 2—00—0538

Opinion filed March 20, 2001.

Teresa L. Berge, of Guardianship & Advocacy Commission, of Rockford, and William E. Coffin, of Guardianship & Advocacy Commission, of Chicago, for appellant.

Linda A. Giesen, State's Attorney, of Dixon (Martin P. Moltz and Diane L. Campbell, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RAPP delivered the opinion of the court:

The respondent, Lawrence S., appeals from the entry of an order of involuntary admission by the Lee County circuit court. 405 ILCS 5/3—701 (West 1998). Respondent contends that the involuntary admission must be reversed because (1) the trial court allowed him to proceed *pro se* without inquiring into his capacity to make an informed waiver of his right to counsel; (2) the trial court denied him the right to cross-examine the State's witnesses; (3) the State did not present clear and convincing evidence that he was subject to involuntary admission; and (4) the State failed to present a written predispositional report and failed to otherwise prove that inpatient hospitalization was the least restrictive treatment alternative.

Because we agree with respondent's second and fourth contentions, we reverse.

On April 17, 2000, a petition seeking the involuntary admission of respondent to an Illinois mental health facility was filed in the circuit

court of Lee County. At that time, respondent was in the custody of the Illinois Department of Corrections (IDOC) at Dixon Correctional Center. The petition alleged that respondent was a person subject to involuntary judicial admission, pursuant to the provisions of the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/3—700 (West 1998)). The petition was accompanied by two certificates executed by a psychologist and the chief psychiatrist at the Dixon Correctional Center. In the certificates it was opined that respondent is a person who is mentally ill, that because of his illness he is reasonably expected to inflict serious physical harm on himself or another in the near future, and that he is unable to provide for his basic physical needs so as to guard himself from physical harm. The matter was set for hearing April 19, 2000.

At the April 19, 2000, hearing respondent's court-appointed counsel informed the court that respondent wished to represent himself. The following exchange occurred:

"RESPONDENT'S COUNSEL: *** I've met with Mr. [S.] first at the Dixon Correctional Center and about two minutes ago and both times he made it quite clear he did not want me to represent him.

THE COURT: Is that correct, Mr. [S.], you don't want a lawyer?

MR. [S.]: I want to defend myself.

THE COURT: Okay. Alright, if there's something happens here that you don't understand, please tell me.

MR. [S.]: Yeah.

THE COURT: Thank you for coming [respondent's counsel]."

The State's first witness was Dr. Dobier, a licensed clinical psychologist from the Dixon Correctional Center. Dr. Dobier first met respondent on April 4, 2000, when respondent was transferred to Dixon Correctional Center from Statesville Correctional Center. Respondent did not cooperate when Dr. Dobier attempted to interview him. Dr. Dobier said that she primarily relied on respondent's records in assessing respondent's psychiatric condition. Dr. Dobier diagnosed respondent as a schizophrenic, paranoid type.

Dr. Dobier explained that respondent has bizarre delusions that the State of Illinois has a satellite that is broadcasting laser beams to him and inserting thoughts in his head. In a meeting with Dr. Dobier, respondent told her that she was a state representative and it was her responsibility to have the satellites turned off. Dr. Dobier opined that respondent is a danger to himself or others and might cause others serious physical harm. Dr. Dobier based her opinion on her review of respondent's IDOC master file, which indicated respondent had on three occasions attacked persons respondent believed were involved in

the conspiracy to have thoughts transmitted to his head. Dr. Dobier testified that she was unable to ascertain whether respondent could take care of himself, and she did not know if respondent had any family members who could assist him should he be released. It was Dr. Dobier's opinion that it was necessary to commit respondent to a mental health facility, and she was aware of no less restrictive alternative.

The trial court asked Dr. Dobier when respondent was to be released from IDOC. The witness responded, "April 21, 2000." The trial court then asked the witness the offense for which respondent was confined. The witness answered that respondent was incarcerated on a parole violation for the offense of burglary. At that point respondent interjected that he had originally been "put in there" for auto theft and snatching a purse from a 12-year-old girl.

After being informed that the assistant State's Attorney had no further questions of Dr. Dobier, the following exchange took place:

"THE COURT: Okay, thank you. You're excused.

ASSISTANT STATE'S ATTORNEY: Did you want to give him the opportunity—

THE COURT: No.

ASSISTANT STATE'S ATTORNEY: I would call Dr. Kowalkowski."

Dr. Kowalkowski, the chief psychiatrist at Dixon Correctional Center, said that he had contact with respondent at Pontiac Correctional Center when respondent was an inmate there in 1997 or 1998. At that time respondent was diagnosed with paranoid schizophrenia. Since respondent came to Dixon Correctional Center, Dr. Kowalkowski has had limited contact with respondent. At the first contact, respondent told Dr. Kowalkowski that he did not need any psychiatric treatment and that he was not harmful to himself or others. On the morning of the hearing, Dr. Kowalkowski asked respondent what he planned to do upon discharge from IDOC. Respondent told Dr. Kowalkowski he did not want treatment and to get away from his cell door. According to Dr. Kowalkowski, a document in respondent's master file indicates that respondent threatened his parole officer.

Dr. Kowalkowski opined that respondent was currently suffering from paranoid schizophrenia. Dr. Kowalkowski opined further that respondent is a danger to himself and to others and has no insight into his chronic mental illness, which will impair his ability to take care of himself. Finally, Dr. Kowalkowski stated that it was his opinion that it was necessary to commit respondent to a mental health facility and that to his knowledge there were no less restrictive options.

When the assistant State's Attorney indicated he had no further questions of Dr. Kowalkowski, respondent asked Dr. Kowalkowski no questions. The trial court did not ask respondent if he wished to cross-examine the doctor. The State called no further witnesses.

Respondent testified that he was currently incarcerated for a parole violation. Respondent said that he never violated any parole agreement premised on the mandatory attendance at outpatient mental health treatment. Respondent insisted that he had never been offered any outpatient mental health treatment and questioned how he could then be forced into a mental institution. Respondent said that he loved himself and had no interest in harming himself. Respondent also read a prepared statement denying the violation of his parole, asserting that he was not a threat to harm anyone, and maintaining that he could take care of himself.

The State briefly recalled Dr. Kowalkowski in rebuttal, and then the trial court stated its findings and holdings. The trial court found:

> "[T]he evidence indicates by clear and convincing standard that the respondent *** suffers from paranoia and schizophrenia. That he's in need of mental treatment, that he has refused mental treatment. That he's a danger to himself and to others and that he should be transferred to the Illinois Department of Mental Health."

The trial court entered an order admitting respondent "to the Illinois Department of Human Resources [*sic*], Division of Mental Health for an initial period not to exceed one hundred eighty (180) days for mental health treatment." The order also states that the trial court had considered alternative mental health facilities. Respondent appeals from that order.

Although we find reversible error based on respondent's second and fourth contentions, we will discuss respondent's waiver of his right to counsel.

Respondent contends that the trial court's order for involuntary admission must be reversed because the trial court allowed respondent to represent himself without first inquiring as to respondent's capacity to make an informed waiver of his right to counsel. The State argues that, despite the trial court's failure to inquire into respondent's capacity to waive his right to counsel, reversal is not necessary because respondent suffered no prejudice. We agree with the State.

■ The Mental Health Code affords all persons alleged to be subject to involuntary commitment a right to counsel. 405 ILCS 5/3—805 (West 1998). The right to counsel can be waived by a respondent only if the court is satisfied that respondent has the capacity to make an informed waiver. 405 ILCS 5/3—805 (West 1998). The trial court is obligated to determine whether a respondent has the capacity to make

an informed waiver of counsel. 405 ILCS 5/3—805 (West 1998). The determination of whether a respondent has the capacity to waive his or her right to counsel is within the discretion of the trial court. *In re Denby*, 273 Ill. App. 3d 287, 289 (1995).

■ In this case, the trial court clearly did not comply with the requirements of the Mental Health Code. We find *In re Click*, 196 Ill. App. 3d 413 (1990), instructive as to the type of inquiry a trial court should make in determining whether a respondent has the capacity to waive his right to counsel. In *Click*, the Fourth District found that the trial court did little to determine respondent's capacity to waive counsel where the inquiry was limited to asking respondent if he wanted to represent himself. *Click*, 196 Ill. App. 3d at 423. The *Click* court pointed out that the trial court asked no questions concerning respondent's mental ability or intelligence or his understanding of the basic purpose of counsel. *Click*, 196 Ill. App. 3d at 423. We believe that these are the minimum inquiries the trial court is required to make of a respondent requesting to represent himself in proceedings pursuant to the Mental Health Code.

Accordingly, we conclude that the trial court erred when it did not make an inquiry into respondent's capacity to waive his right to counsel before allowing respondent to represent himself. However, reversal is not required on every occasion the trial court fails to inquire into respondent's capacity before accepting a waiver of counsel; respondent must also suffer prejudice. *Denby*, 273 Ill. App. 3d at 291.

By accepting respondent's waiver of counsel and allowing him to proceed *pro se*, the trial court implicitly concluded respondent had the capacity to waive a legal right. On appeal, the proper inquiry is not whether respondent suffered prejudice during the hearing by proceeding without counsel (litigants nearly always suffer prejudice when they proceed without counsel), but whether respondent suffered prejudice from the court's failure to inquire as to his capacity. See *In re Dennis D.*, 303 Ill. App. 3d 442, 448-49 (1999). Accordingly, we must determine whether the record supports the conclusion that respondent had the capacity to waive a legal right.

■ Under Illinois law, adults are presumed competent to direct their legal affairs. *In re Phyllis P.*, 182 Ill. 2d 400, 401 (1998). "Underlying this presumption is the distinction between mental illness and the specific decisional capacity to exercise or waive legal rights." *Phyllis P.*, 182 Ill. 2d at 402.

When respondent took the stand on his own behalf, and before beginning his testimony, the following exchange occurred between respondent and the trial court:

"THE COURT: Okay. Now, Mr. [S.], I am going to give you an op-

portunity to say whatever you want to say, okay. First tell us your name.

MR. S.: My name is [Mr. S.].

THE COURT: What's your birthday?

MR. S.: [states full date of birth].

THE COURT: Okay. Well, do you understand what we're here for?

MR. S.: Yes.

THE COURT: What are we here for?

MR. S.: The Illinois Department of Corrections is accusing me of not being capable of taking care of myself and not being capable to think for myself.

THE COURT: And what do they want to do, do you know?

MR. S.: The Illinois Department of Corrections is trying to admit me to a, to a mental institution of the United States after I'm released from their department of corrections.

THE COURT: That's right."

Although this inquiry was not specifically tailored to glean whether respondent understood the exact ramifications of waiving his right to counsel, we believe it demonstrated that respondent had the capacity required to waive a legal right. See *Phyllis P.*, 182 Ill. 2d at 402. We therefore hold that respondent was not prejudiced by the trial court's failure to determine respondent's capacity before accepting his waiver of counsel. Accordingly, we find no abuse of discretion in allowing respondent to represent himself at the hearing.

Respondent's second contention is that the order involuntarily committing him to a mental health facility must be reversed because he was denied the right to cross-examine the State's witnesses. The State argues that reversal is not required in this case because respondent was allowed to contradict Dr. Dobier's testimony and to testify on his own behalf. For the reasons that follow, we hold that the trial court's denial of respondent's right to cross-examination requires reversal.

■ Involuntary commitment hearings conducted pursuant to the Mental Health Code are civil matters subject to the Civil Practice Law (735 ILCS 5/2—101 *et seq.* (West 1998)). 405 ILCS 5/6—100 (West 1998). Thus, the constitutional rights to which a defendant in a criminal proceeding is entitled do not adhere to a respondent in a commitment hearing. However, our supreme court has acknowledged that "[i]nvoluntary mental health services entail a 'massive curtailment of liberty.'" *In re Barbara H.*, 183 Ill. 2d 482, 496 (1998), quoting *Vitek v. Jones*, 445 U.S. 480, 491, 63 L. Ed. 2d 552, 564, 100 S. Ct. 1254, 1263 (1980). Because the State seeks to curtail the respondent's liberty in an involuntary commitment hearing, the Supreme Court has

held that procedural due process does guarantee certain protections to civil commitment respondents. *Vitek*, 445 U.S. at 491-94, 63 L. Ed. 2d at 563-65, 100 S. Ct. at 1262-64.

In *Vitek*, the Court identified, *inter alia*, the right to confront and to cross-examine witnesses called by the State, except upon an unarbitrary finding of good cause for not permitting such cross-examination, as a minimum safeguard to which due process entitles a respondent in a commitment proceeding. *Vitek*, 445 U.S. at 494-96, 63 L. Ed. 2d at 565-67, 100 S. Ct. at 1264-65. *Vitek* makes clear that due process affords the respondent at an involuntary commitment hearing some right to cross-examine witnesses against him.

Nothing in the record of this case shows that respondent was even made aware that he could ask questions of the State's witnesses. At worst, the record shows a deliberate denial of respondent's right to cross-examine and, at best, the neglect of what is a matter of right in all cases. We note that if the trial court had good cause for denying respondent cross-examination as is permitted under *Vitek*, such as respondent's physical manifestation of unwillingness or inability to perform cross-examination, it should have been made part of the record.

The State cites no authority for its position that reversal is not required in this case because respondent was allowed to contradict Dr. Dobier's testimony and allowed to testify on his own behalf. We fail to see how respondent's contradiction of Dr. Dobier's testimony or the trial court's allowing respondent to testify begins to replace the procedural safeguard of cross-examination of the State's witnesses. We conclude that the trial court's failure to allow respondent to cross-examine the State's witnesses violated respondent's right to due process.

■ The reversal of the involuntary admission order is also warranted because the trial court failed to comply with section 3—810 of the Mental Health Code, which states:

> "Before disposition is determined, the facility director or such other person as the court may direct shall prepare a written report including information on the appropriateness and availability of alternative treatment settings, a social investigation of the respondent, a preliminary treatment plan, and any other information which the court may order. *** The treatment plan shall describe the respondent's problems and needs, the treatment goals, the proposed treatment methods, and a projected timetable for their attainment. If the respondent is found subject to involuntary admission, the court shall consider the report in determining an appropriate disposition." 405 ILCS 5/3—810 (West 1998).

■ The State concedes that the court did not consider a predispositional report prepared pursuant to section 3—810 in this case. The State argues that the information the predispositional report is to contain was provided during the course of the testimony at the hearing and therefore there was no error. We disagree.

The complete failure to comply with section 3—810 of the Mental Health Code is reversible error. *In re Watts*, 250 Ill. App. 3d 723, 727 (1993). However, in the absence of an objection from the respondent, oral testimony containing the information required by section 3—810 can be an adequate substitute for the predispositional report. *In re Robinson*, 151 Ill. 2d 126, 134 (1992).

We have reviewed the testimony of the State's witnesses that the State argues conforms to the requirements of section 3—810 and find it to be lacking. Dr. Dobier and Dr. Kowalkowski each opined that commitment to a mental health facility was the least restrictive alternative, but neither explained the basis for her or his opinion nor mentioned any other alternatives that were considered. There was simply no testimony about the appropriateness and availability of alternative treatment settings or about a treatment plan for respondent.

For the foregoing reasons, the order of the circuit court of Lee County is reversed. Because our decision to reverse is based on respondent's second and fourth contentions, we need not fully address the remaining contention raised by respondent. We do, however, note that the record supports the trial court's finding that defendant was currently a danger to himself and others. It is unnecessary to remand the matter for a new hearing because the order of involuntary admission has expired and the State can file a new petition in the circuit court if it feels the respondent remains in need of involuntary commitment. See *Barbara H.*, 183 Ill. 2d at 498.

Reversed.

BOWMAN and BYRNE, JJ., concur.