# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Michael F.*, 2011 IL App (5th) 090423

---

| | |
|---|---|
| Appellate Court Caption | *In re* MICHAEL F., Alleged to Be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Michael F., Respondent-Appellant). |
| District & No. | Fifth District<br>Docket No. 5-09-0423 |
| Rule 23 order filed<br>Motion to publish<br>granted | July 27, 2011<br><br>September 1, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings on a petition for respondent's involuntary commitment, the trial court abused its discretion in allowing respondent to waive his right to counsel and represent himself at the hearing without sufficiently informing him of the right he was waiving, what the hearing concerned, and the consequences of the hearing. |
| Decision Under Review | Appeal from the Circuit Court of Madison County, No. 09-MH-119; the Hon. Clarence W. Harrison II, Judge, presiding. |
| Judgment | Reversed. |

Counsel on Appeal  Barbara A. Goeben and Veronique Baker, both of Guardianship and Advocacy Commission, of Alton, for appellant.

William A. Mudge, State's Attorney, of Edwardsville (Patrick Delfino, Stephen E. Norris, and Rebecca E. McCormick, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel  JUSTICE WEXSTTEN delivered the judgment of the court, with opinion.

Justices Goldenhersh and Donovan concurred in the judgment and opinion.

**OPINION**

¶ 1  The respondent, Michael F., appeals from an order of the circuit court of Madison County granting a petition for an involuntary admission. On appeal, the respondent argues that the court's decision should be reversed because the circuit court failed to determine before the hearing that the respondent could knowingly and voluntarily waive his right to counsel. We reverse.

¶ 2            FACTS

¶ 3  On July 13, 2009, the respondent, who was a voluntary patient at Alton Mental Health Center, signed a written request for a discharge. On July 20, 2009, Alton Mental Health Center social worker Jolene Becker filed a petition alleging that the respondent was a person subject to an involuntary admission pursuant to section 3-600 of the Mental Health and Developmental Disabilities Code (the Mental Health Code) (405 ILCS 5/3-600 (West 2008)). Becker alleged that the respondent was a person with a mental illness; that because of his mental illness, he was reasonably expected to engage in dangerous conduct placing him or another at reasonable risk for harm; that because of the nature of his illness, he was unable to understand his need for treatment and, if not treated, was reasonably expected to continue to suffer mental deterioration or emotional deterioration to the point that he was reasonably expected to engage in dangerous conduct; and that he was in need of immediate hospitalization for the prevention of that harm.

¶ 4  On August 4, 2009, at the hearing on the petition, the respondent's counsel indicated that the respondent wanted to represent himself. The circuit court then addressed the respondent, asking whether he desired to represent himself, whether he desired to discharge his attorney, and whether he understood that he would be held to the same standard as if represented by

-2-

counsel. After answering these questions in the affirmative, the respondent again stated that he desired to represent himself. The court indicated that it was granting the respondent's request to waive his right to counsel, but the following colloquy ensued:

"[Respondent's counsel:] Your Honor, it would be our position that you would have to inquire whether he has the capacity to do so at this time.

THE COURT: I think the problem I'm going to have is being able to determine that without some evidence as to his current capacity is going to be limited [*sic*]. My thought is that unless I have the testimony with regard to the Involuntary Petition, I may not be able to make that determination, and to do so preliminarily would require me to essentially make assumptions regarding [the respondent]. In the event that the testimony with regard to the petition is so sufficient, I may have to reconsider whether I have allowed him to represent himself."

¶ 5 The circuit court thereafter asked the respondent if he knew where he was, the current date, and the name of the acting president. After the respondent answered each question correctly, the court stated, "I'll be reserving my ultimate ruling to observe [the respondent's] participation in the case itself, but I will be going ahead and taking [evidence] on the petition, allowing [the respondent] *** to engage in basic representation."

¶ 6 Becker then testified that the respondent had been recently admitted to the Alton Mental Health Center on June 27, 2009, when it was reported that he threatened bodily harm to his mother, that he had been living in an apartment with no electricity or food when the weather heat index had been above 100 degrees, and that he had been highly agitated about military deployment operations, believing himself to be a high commander in the United States Army and Marines, although he was not a veteran.

¶ 7 Becker testified that the respondent had been previously admitted to Alton Mental Health Center in March 2008 and then from April to July 2008. Becker testified that the respondent suffered from schizoaffective disorder, bipolar type, with alcohol and cannabis use. Becker testified that the respondent continued to be delusional and grandiose. Becker testified that the respondent did not believe that he had a mental illness and did not believe that he needed treatment.

¶ 8 Becker testified that the Alton Mental Health Center staff had administered emergency medications to the respondent for 72 hours, due to the respondent's aggression, including threatening behavior toward a peer. Becker testified that in the previous week, the staff began emergency medications once more because the respondent had fled the courtroom on the initially scheduled hearing date.

¶ 9 Becker testified that, if discharged, the respondent would be unable to provide for his basic needs and would exhibit dangerous conduct, placing another individual in a reasonable expectation of being harmed. Becker testified that she reasonably expected that if the respondent were not treated, he would continue to suffer mental deterioration or emotional deterioration or both and engage in dangerous conduct.

¶ 10 As cross-examination, the respondent offered the following: "No question for Ms. Becker except for can she elaborate the other entitlement for the medication, since it is often generic, and the medical founding entitlement?" The circuit court clarified for Becker that the

respondent was asking for the different names of the medications he was taking, and Becker answered that olanzapine is a generic for Zyprexa. The State rested after the respondent's one-question cross-examination of its only witness.

¶ 11    The respondent then testified that he had not been evaluated by Jody Fisher since June 21 and that the complaint of June 26, 2009, therefore violated the Mental Health Code. See 405 ILCS 5/3-602 (West 2008) (a certificate for an involuntary admission shall indicate that the physician personally examined the respondent not more than 72 hours prior to the admission). The respondent testified that he had funds to restore his electricity and that he had not acted violently. The respondent stated, "If there is to be any trial *** being of a military acknowledgment, I reserve the right to have that of a reserved Circuit Court acknowledgment due to the military acknowledgments of such which would be made." The respondent asserted that he was not a danger to himself or others, and he requested that he be released to his own custody.

¶ 12    At the close of the evidence, the circuit court noted that the respondent's presentation was a dramatic improvement from that reflected in the records from the end of June. The circuit court stated that the respondent looked well-rested and well-groomed and was conscious of the proceedings and civil in presenting his case.

¶ 13    The respondent then requested leave to submit five exhibits, one of which included various written requests, including a request that the court discontinue his treatment. After the court accepted the respondent's exhibits into evidence, the following exchange occurred:

> "THE RESPONDENT: *** Your Honor, may you also be able to establish my proper appeals petition that was put in place from a remote processing of the Cecil Management Group of realty management that was filed with the Circuit Court of the Third Judicial Circuit in Edwardsville?
>
> THE COURT: I do not have that in front of me. Is that for a dispute with your landlord?
>
> THE RESPONDENT: No. That is upon today's current hearing."

¶ 14    The respondent also requested to make closing statements. During these statements, the respondent referred to reports of the Las Vegas police department and "a small FBI office within their location" and seemed to assert that his birth certificate established the "reason of transfer of custody from [his] mother." The respondent indicated that his attorney was "protracted from Alton Mental Health Center," and he was unable to establish his own "from a public defender or assistant public defender's notion." The respondent further stated that the medication Zyprexa was a health risk to him because of continuous open bleeding on his feet, and he requested Wellbutrin as an alternative medication.

¶ 15    The circuit court explained to the respondent that his attorney's office was located in the Alton Mental Health Center facility because of state funding issues but that she was actually employed by the Guardianship and Advocacy Commission, an independent agency appointed specifically to act much like a public defender in this type of case. The circuit court clarified that it was not entering an order for involuntary medication but that it was solely deciding whether to grant the petition for an involuntary admission. The circuit court "confirm[ed] [the respondent's] right to go ahead and discharge counsel."

¶ 16    On August 4, 2009, at the end of the hearing, the circuit court found the respondent to be a person subject to an involuntary admission. The circuit court then directed that a notice of appeal be prepared and submitted to the respondent for his signature.

¶ 17    The circuit court's August 4, 2009, written order finding the respondent subject to an involuntary admission left blank the placement and period of the respondent's commitment. On August 7, 2009, the respondent filed a timely notice of appeal. Thereafter, on September 17, 2009, the Alton Mental Health Center discharged the respondent.

¶ 18                                                    ANALYSIS

¶ 19    Initially, we recognize that this case is moot. Because the respondent was discharged from the mental health facility on September 17, 2009, it is impossible for us to grant any meaningful relief, and any decision we render is essentially advisory in nature. Generally, a court will not consider moot questions or render advisory decisions. *In re Robert S.*, 213 Ill. 2d 30, 45 (2004). However, "[q]uestions raised in an appeal that are capable of repetition, yet might evade review because of the short duration of the order, fall under the exception of the mootness doctrine." *In re Kevin S.*, 381 Ill. App. 3d 260, 263 (2008). Given that the respondent has a history of civil commitment and the circumstances present here may likely reoccur without the opportunity for a resolution before the case is rendered moot, we will address the respondent's contentions.

¶ 20    The respondent argues that the circuit court denied the respondent's right to a fair trial by allowing him to proceed *pro se* without fully determining that he knowingly and voluntarily waived his right to counsel.

¶ 21    The Mental Health Code affords all persons alleged to be subject to an involuntary commitment a right to counsel. 405 ILCS 5/3-805 (West 2008). "Involuntary mental health services entail a 'massive curtailment of liberty' [citation], and the right to counsel is a central feature of the procedures enacted by our legislature to ensure that Illinois citizens are not subjected to such services improperly." *In re Barbara H.*, 183 Ill. 2d 482, 496 (1998). A respondent may waive the right to counsel only if the trial court is satisfied that the respondent has the capacity to make an informed waiver. 405 ILCS 5/3-805 (West 2008). The determination of whether a respondent has the capacity to waive his or her right to counsel is within the discretion of the trial court. *In re Denby*, 273 Ill. App. 3d 287, 289 (1995).

¶ 22    Specifically, the Mental Health Code provides the following:

"A hearing shall not proceed when a respondent is not represented by counsel unless, after conferring with counsel, the respondent requests to represent himself and the court is satisfied that the respondent has the capacity to make an informed waiver of his right to counsel." 405 ILCS 5/3-805 (West 2008).

¶ 23    To determine whether the respondent has the capacity to make an informed waiver of his right to counsel, the trial court must make inquiries concerning the respondent's mental ability, intelligence, and understanding of the basic purpose of counsel. *In re Lawrence S.*, 319 Ill. App. 3d 476, 481 (2001); *In re Click*, 196 Ill. App. 3d 413, 423 (1990). The court has an obligation to be certain a respondent has the legal or educational background necessary

to represent himself. *In re Evelyn S.*, 337 Ill. App. 3d 1096, 1111-12 (2003); *In re Yoder*, 289 Ill. App. 3d 465, 470 (1997). At the very least, the trial court should ask a few questions requiring answers that would show whether the respondent has a basic understanding of what the hearing is about and the role of counsel. See *In re Evelyn S.*, 337 Ill. App. 3d at 1112; *In re Click*, 196 Ill. App. 3d at 423.

¶ 24 Even when the trial court fails to make a specific inquiry to glean whether a respondent understands the ramifications of his waiving his right to counsel, the respondent suffers no prejudice if he demonstrates the capacity required to waive the legal right to counsel. *In re Lawrence S.*, 319 Ill. App. 3d at 481 (although the trial court clearly did not comply with the Mental Health Code's requirement that it make an inquiry into the respondent's capacity to waive his right to counsel before allowing the respondent to represent himself, a reversal was not required because the respondent suffered no prejudice). On appeal, we must determine "not whether respondent suffered prejudice during the hearing by proceeding without counsel (litigants nearly always suffer prejudice when they proceed without counsel), but whether respondent suffered prejudice from the court's failure to inquire as to his capacity." *In re Lawrence S.*, 319 Ill. App. 3d at 481. Accordingly, we must determine whether the record supports the conclusion that the respondent had the capacity to waive his right to counsel.

¶ 25 In the present case, before hearing evidence on the petition for an involuntary commitment, the circuit court addressed the respondent, asking whether he desired to represent himself, whether he desired to discharge his attorney, and whether he understood that he would be held to the same standard as if represented by counsel, and the respondent answered the questions in the affirmative. After the respondent's counsel suggested that the circuit court inquire into the respondent's capacity to waive counsel, the circuit court asked the respondent if he knew where he was, the current date, and the name of the acting president. After the respondent answered these questions correctly, the circuit court allowed the hearing to proceed with the respondent representing himself.

¶ 26 We agree with the respondent that the circuit court failed to sufficiently inform him of the right he was waiving (that of counsel), what the hearing concerned (an involuntary civil commitment), and the consequences of the hearing (a 90-day period of civil commitment). The circuit court also failed to make meaningful inquiries concerning the respondent's mental ability, intelligence, understanding of the basic purpose of counsel, and ability to represent himself. See *In re Lawrence S.*, 319 Ill. App. 3d at 481; *In re Click*, 196 Ill. App. 3d at 423. The circuit court's questions were insufficient to determine the respondent's capacity to knowingly waive his right to counsel and to represent himself.

¶ 27 We further find that the respondent was prejudiced as a result of the circuit court's failure to determine his capacity to waive counsel. The respondent's statements at the hearing indicated that he believed that the hearing involved the involuntary administration of medication and a real estate dispute. The very nature of the hearing, the respondent's confusion, and the respondent's statements during the hearing indicated that the respondent lacked the capacity to make an informed waiver of counsel. See *In re Click*, 196 Ill. App. 3d at 423. Accordingly, we find that the circuit court abused its discretion in allowing the respondent to waive his right to counsel and represent himself at the hearing.

¶ 28                          CONCLUSION

¶ 29      For the foregoing reasons, we reverse the judgment of the circuit court of Madison County.

¶ 30      Reversed.