2015 IL App (3d) 130605

Opinion filed April 7, 2015

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2015

| | | |
|---|---|---|
| *In re* KURTIS C., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| a Person Found Subject to Involuntary | ) | Peoria County, Illinois. |
| Medication | ) | |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | Appeal No. 3-13-0605 |
| Petitioner-Appellee, | ) | Circuit No. 13-MH-98 |
| | ) | |
| v. | ) | |
| | ) | |
| Kurtis C., | ) | The Honorable |
| | ) | Lisa Y. Wilson, |
| Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justice Carter concurred in the judgment and opinion.
Justice Schmidt specially concurred, with opinion.

**OPINION**

¶ 1 Respondent Kurtis C. voluntarily admitted himself to a hospital for mental health treatment. The admitting physician filed a petition for administration of psychotropic medications. Prior to a hearing on the petition, respondent indicated his desire to waive counsel and represent himself. After hearing testimony from respondent's treating physician, the court denied respondent's request to proceed *pro se*. Following a hearing, the court found the petition

proven by clear and convincing evidence and entered an order authorizing medical personnel to administer to respondent the medications set forth in the petition. On appeal, respondent argues that (1) the trial court improperly denied his request to waive counsel, (2) the allegations set forth in the petition were inadequate, (3) he was denied effective assistance of counsel, and (4) the petition was not proved by clear and convincing evidence. We reverse, holding that the trial court improperly denied respondent his right to waive counsel.

¶ 2                                                    FACTS

¶ 3         In July 2013, respondent Kurtis C. voluntarily admitted himself to Unity Point Health Methodist Medical Center (Methodist Medical Center) in Peoria. The same day, respondent's admitting physician, Dr. Thornton, filed a petition for administration of psychotropic medications. The petition alleged that respondent suffered from mental illness and that the administration of psychotropic medication was necessary for the following reasons: "Patient was admitted due to bizarre behavior and delusions. He is currently psychotic and is refusing to take medications. He is expressing extreme paranoia." The petition further alleged that respondent "lacks capacity to give informed consent to: psychotropic medication and, *** [t]he petition seeks authorization for testing and other procedures, that said testing and procedures are essential for the safe and effective administration of treatment." The petition listed 13 psychotropic medications that could potentially be administered to respondent.

¶ 4         On the date set for the hearing on the petition, respondent appeared in court with a court-appointed attorney. Before the hearing began, respondent's attorney notified the court that respondent told him he "wishes to proceed *pro se* and represent himself." The court never addressed respondent nor questioned him about his request to proceed *pro se*. Instead, the court

gave the State an opportunity to respond. The prosecutor stated that she wanted to call respondent's treating psychiatrist, Dr. Singh, to testify regarding respondent's request.

¶ 5        Dr. Singh testified that he had seen respondent for two days, the day of the hearing and the previous day. Dr. Singh diagnosed respondent with schizophrenia based on his "disorganized thought processes" and lack of "meaningful conversation." Dr. Singh testified that respondent did not have the capacity to understand what was going on in court because "[h]e is totally not in touch with reality." Dr. Singh testified that respondent "is not able to give informed consent, which means he does not understand what is going on." Based on Dr. Singh's testimony, the court found that respondent was not competent to represent himself and ordered respondent's attorney to continue representing him.

¶ 6        The court then held a hearing on the petition. Dr. Singh testified that respondent was suffering from schizophrenia and had exhibited a deterioration of his ability to function because of his mental illness. According to Dr. Singh, respondent was not threatening but was "isolating himself to his room." Additionally, Dr. Singh stated that respondent "does not carry on any meaningful conversation." While in the hospital, two physicians prescribed respondent medication, but, according to Dr. Singh, respondent "would get agitated and refuse it." Respondent also refused to sign releases so that his physicians would have access to his medical records.

¶ 7        Dr. Singh was requesting permission to administer 13 psychotropic medications in all but would administer only 1 or 2 at a time until respondent's condition was stabilized. Dr. Singh did not know if respondent had been on any of the medications before because of his lack of cooperation and refusal to release his medical records. Dr. Singh testified that respondent told two other doctors that he had previously been diagnosed with schizophrenia. Dr. Singh thought

3

that respondent likely had repeated episodic occurrences and hospitalizations related to his mental illness "due to non-compliance with medications."

¶ 8    Dr. Singh testified that the medications he proposed giving respondent should help him "to get some clarity and be thinking in an organized fashion so that he can function well." According to Dr. Singh, without medication, respondent "doesn't even know what he's doing." Dr. Singh opined that the benefits of the medication would outweigh any potential harm. Dr. Singh testified that defendant did not have any insight into his mental illness or his need for treatment nor did he have the capacity to make a reasoned decision about taking psychotropic medication.

¶ 9    Dr. Singh testified that respondent came to the hospital because the police were called after respondent mailed a dead cat to his parents. Apparently, respondent believed that his cat would come back to life if he mailed it to his former residence. Dr. Singh tried talking to respondent about the incident, but respondent refused to talk to him. According to Dr. Singh, respondent is "just disorganized and bizarre at this point."

¶ 10    Respondent testified that he did not wish to take psychotropic medication and stated that he had the right to decline medication pursuant to the "Patient Consumer Bill of Rights." He does not believe that he suffers from schizophrenia. He was diagnosed in 1996, at age 17, with bipolar disorder. He has previously taken five of the medications listed in the petition for administration of psychotropic medication. He last took psychotropic medication in 2009. He testified that "it feels so good to be off medication." Respondent testified that he attended junior college in Carbondale in 2006 and 2007 and earned an associate's degree.

¶ 11    Respondent testified that before he moved to Peoria, he lived in Carbondale, where he stayed with a friend or on a cot in a storage shed. He relocated to Peoria to attend Midstate

4

College. He slept on a picnic bench in Peoria. Respondent provided a lengthy explanation to the court about his desire and right to refuse medication.

¶ 12 The trial court found that the petition for administration of psychotropic medication was proven by clear and convincing evidence and entered an order allowing the staff of Methodist Medical Center to administer the medications set forth in the petition to respondent for a period not to exceed 90 days.

¶ 13                                                      ANALYSIS

¶ 14                                                          I

¶ 15 Initially, we recognize that this case is moot. The underlying judgment entered by the trial court in 2013, was limited in duration to a period of 90 days. That period has long since passed. Thus, it is impossible for us to grant any meaningful relief.

¶ 16 As a general rule, courts will not decide moot questions. *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998). However, there are three recognized exceptions: (1) the public interest exception, (2) the "capable of repetition yet evading review" exception, and (3) the collateral consequences exception. *In re Vanessa K.*, 2011 IL App (3d) 100545, ¶ 14.

¶ 17 The public interest exception allows a court to consider an otherwise moot case when (1) the issue presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question. *In re Alfred H.H.*, 233 Ill. 2d 345, 355 (2009). Questions about compliance with procedures set forth in the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/1-100 *et seq*. (West 2012)) are issues of public concern. *In re Nicholas L.*, 407 Ill. App. 3d 1061, 1071 (2011).

¶ 18     The "capable of repetition yet evading review" exception requires the complaining party to show that (1) the challenged action is too short in duration to be fully litigated prior to its cessation, and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again. *Vanessa K.*, 2011 IL App (3d) 100545, ¶ 14. Sufficiency of the evidence arguments may be reviewed under this exception, especially where a respondent has a history of noncompliance with medication. *Id.* ¶ 16.

¶ 19     Here, both respondent and the State agree that the public interest exception and "capable of repetition yet evading review" exception apply in this case. We agree and will address this appeal on the merits.

¶ 20                                                    II

¶ 21     Respondent argues that the trial court improperly denied him his right to waive counsel and represent himself at the hearing on the petition for administration of psychotropic medication.

¶ 22     All adults are presumed legally competent. *In re Phyllis P.*, 182 Ill. 2d 400, 401 (1998); *Barbara H.*, 183 Ill. 2d at 495. Even individuals adjudicated mentally ill pursuant to the Code "nevertheless enjoy a presumption of competency to direct their legal affairs." *Phyllis P.*, 182 Ill. 2d at 402. As the Code explicitly provides, "[n]o recipient of services shall be presumed legally disabled." 405 ILCS 5/2-101 (West 2012). "Underlying this presumption is the distinction between mental illness and the specific decisional capacity to exercise or waive legal rights." *Phyllis P.*, 182 Ill. 2d at 402. Commitment of a person for mental health treatment "does not constitute an adjudication of legal incompetence to care for and manage one's affairs." *People v. Adams*, 35 Ill. App. 3d 810, 815 (1976).

¶ 23    Pursuant to section 3-803 of the Code, an individual who is the subject of a petition for the administration of psychotropic medication is entitled to be represented by counsel or represent himself if he is capable of making an informed waiver of his right to counsel. See 405 ILCS 5/3-805, 2-107.1(a)(3) (West 2012); *Barbara H.*, 183 Ill. 2d at 495. Section 3-805 provides: "A hearing shall not proceed when a respondent is not represented by counsel unless, after conferring with counsel, the respondent requests to represent himself and the court is satisfied that the respondent has the capacity to make an informed waiver of his right to counsel." 405 ILCS 5/3-805 (West 2012).

¶ 24    When a respondent indicates his desire to represent himself, the trial court is obligated to determine whether he has the capacity to make an informed waiver of counsel. 405 ILCS 5/3-805 (West 2012); *In re Lawrence S.*, 319 Ill. App. 3d 476, 480-81 (2001). In making such a determination, the trial court must ask the respondent questions concerning his mental ability, intelligence, and understanding of the basic purpose of counsel. *In re Michael F.*, 2011 IL App (5th) 090423, ¶ 23; *Lawrence S.*, 319 Ill. App. 3d at 481. A court commits error if it rules on a respondent's request to waive counsel before making such an inquiry. *Lawrence S.*, 319 Ill. App. 3d at 481; *In re Dennis D.*, 303 Ill. App. 3d 442, 448-49 (1999).

¶ 25    A court commits prejudicial and reversible error if it denies a respondent's request to proceed *pro se* without questioning the respondent unless the respondent's behavior in the courtroom is so disruptive that it leads the trial court to conclude that the respondent lacks capacity to waive counsel. *Id*. at 449-50. If there is some nonverbal action that leads to such a determination, the trial court must note it, thus making it a part of the record for review. *Id*. at 450.

7

¶ 26    Here, the trial court did not question defendant before denying his request to waive counsel and proceed *pro se*. This was error. See *id*. at 448-49. Case law has uniformly interpreted the statute to require that the court question respondent to determine his capacity to waive counsel by inquiring as to his mental ability, intelligence and understanding of the basic purpose of counsel. See *Michael F.*, 2011 IL App (5th) 090423, ¶ 23; *In re Wendy T.*, 406 Ill. App. 3d 185, 190 (2010), *overruled on other grounds by In re Rita P.*, 2014 IL 115798; *Lawrence S.*, 319 Ill. App. 3d at 481; *In re Tiffin*, 269 Ill. App. 3d 581, 586 (1995). Without such an inquiry, the trial court had insufficient information upon which to conclude that respondent lacked capacity to waive counsel. See *Dennis D.*, 303 Ill. App. 3d at 449-50. Furthermore, we can find nothing in the record indicating that respondent's behavior during the hearing justified the court's decision to deny his request to represent himself. See *id*. at 450. Because the trial court failed to question respondent to determine his ability to waive counsel and because the record lacks any suggestion of defendant's inability to act appropriately during the proceeding, the court committed reversible error. See *id*. We reverse.

¶ 27                                         III

¶ 28    Since we reverse on the issue set forth above, we need not address respondent's remaining arguments on appeal.

¶ 29                                    CONCLUSION

¶ 30    The judgment of the circuit court of Peoria County is reversed.

¶ 31    Reversed.

¶ 32    JUSTICE SCHMIDT, specially concurring.

¶ 33    I concur in the majority's opinion and analysis on the waiver of counsel issue. I also concur in the decision not to address the remaining issues, but not for the reason cited by the

majority in paragraph 28. I find a logical disconnect in saying that moot issues meet exceptions to the mootness doctrine and then saying, "we don't need to address them because our ruling on the first issue is enough to reverse." We do not *need* to address any moot issue. However, once we decide that an issue meets an exception to the mootness doctrine, then we should address it. If there is no point in addressing it, then it does not qualify as an exception. In a moot case, a reversal on one issue is relatively meaningless in the sense that we are not really providing any relief. The harm has been done and cannot be undone. The point of deciding a moot issue is to try to prevent an error from recurring. To that extent, moot issues are independent of each other.

¶ 34        I concur because I find that in this case only the waiver of counsel issue meets an exception to the mootness doctrine.