RIVERBOAT DEVELOPMENT CORPORATION *et al.*, Plaintiffs-Appellants, v. ILLINOIS GAMING BOARD *et al.*, Defendants-Appellees (Alton Riverboat Gambling Partnership *et al.*, Intervenors and Defendants-Appellees).

First District (3rd Division)    No. 1—92—0052

Opinion filed November 16, 1994.

Frederick J. Sperling and Aphrodite Kokolis, both of Chicago, for appellants.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE TULLY delivered the opinion of the court: Plaintiffs, Riverboat Development Corporation (hereinafter referred to as Riverboat) and Joe A. Terrell (hereinafter referred to as Terrell), filed a single-count complaint in chancery against defendants, Illinois Gaming Board (hereinafter referred to as Board), William Kunkle, Jr., W. Jack Chamblin, Robert G. Gibson, Raymond C. Niepert, and J. Thomas Johnson, in their official capacities as members of the Illinois Gaming Board, and Morton E. Friedman, in his official capacity as Administrator of the Illinois Gaming Board. Plaintiffs sought a declaration that: the proposed rules pursuant to which the Board was purporting to act were void as they were not properly promulgated in accordance with the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1991, ch. 127, par. 1001 *et seq.* (now 5 ILCS 100/1 *et seq.* (West 1992))) (hereinafter referred to as Adminis-

trative Procedure Act); the Board was without jurisdiction to act until rules were properly promulgated in accordance with the Administrative Procedure Act; and its actions pursuant to the proposed rules are null and void. Plaintiffs also sought to enjoin the Board from acting pursuant to the Riverboat Gambling Act (Ill. Rev. Stat. 1991, ch. 120, par. 2401 *et seq.* (now 230 ILCS 10/1 *et seq.* (West 1992))) (hereinafter referred to as the Riverboat Gambling Act) until such rules were properly promulgated.

Intervenors-defendants-appellees were all of the successful applicants whose licenses were placed at risk by the broad relief sought by the plaintiffs.

Following the presentation of oral arguments on cross-motions for partial summary judgment, the circuit court ruled in favor of the defendants and entered an order finding no just reason for delay or appeal. The plaintiff now appeals from this order pursuant to Supreme Court Rule 304 (134 Ill. 2d R. 304).

As all of the riverboat gambling licenses authorized by the Illinois State legislature have been issued, most of the relief originally sought by the plaintiffs is now moot. The only relief plaintiffs seek at the appellate level is a declaration that the Gaming Board's finding that plaintiffs are "not suitable for licensing" is null and void because it was made pursuant to invalid and ineffective administrative rules.

## STATEMENT OF FACTS

The material facts are not in dispute. Plaintiff Riverboat is an Illinois corporation and Terrell is its sole shareholder. On June 30, 1990, Terrell, on behalf of Riverboat Development, submitted an application to the Board for a license to conduct riverboat gambling from a home dock in East St. Louis, Illinois. Thereafter, the Board conducted a background investigation of plaintiffs.

On November 26, 1990, the Board voted to adopt administrative rules (hereinafter referred to as proposed rules) dealing with licenses and hearings. Immediately after the Board voted to adopt said rules, the chairman said "the fact that the Board's rules had not gone through the formal rulemaking process does not preclude the Board from operating under them."

On November 27, 1990, after a formal presentation by plaintiffs, the Board found the plaintiffs "not preliminarily suitable for licensing." The "not preliminarily suitable for licensing" standard is set forth in the proposed rules and is not contained anywhere in the Riverboat Gambling Act. On December 22, 1991, the Gaming Board sent a letter to Terrell confirming in writing its November 27, 1990, finding. This letter stated that the Board found the plaintiffs "were

not a suitable candidate to receive a Riverboat Gambling License" and informed Terrell that he was entitled to "request a hearing in accordance with Rule 410" of the proposed rules. The letter also contained detailed findings of the Board which supported its denial. Terrell filed a timely request for a hearing.

On January 18, 1991, the proposed rules were published for the first time in the Illinois Register. In the administrative hearing, plaintiffs challenged the proposed rules on the grounds that they had not been properly promulgated in accordance with the requirements of the Administrative Procedure Act and therefore they had been improperly denied a license. The proposed rules were revoked and withdrawn before they were legally effectuated and subsequently replaced by proposed emergency rules.

## ISSUES PRESENTED FOR REVIEW

The only issue presented for review is whether the denial of plaintiffs' application for a riverboat gambling owner's license is void as said denial was issued pursuant to administrative rules which were never valid or effective as they did not comply with the Administrative Procedure Act requirements.

## OPINION

The Riverboat Gambling Act specifically provides for all administrative rules and procedures to be promulgated in accordance with the Administrative Procedure Act (Ill. Rev. Stat. 1991, ch. 120, par. 2417 (now 230 ILCS 10/17 (West 1992))). It is settled law that administrative agencies may "establish standards of conduct in applying statutes by either rulemaking or adjudication. [Citation.] *** [I]f an agency decides to adopt a rule, it must comply with the provisions of the [Administrative] Procedure Act." (*Ron Smith Trucking, Inc. v. Jackson* (1990), 196 Ill. App. 3d 59, 65, 552 N.E.2d 1271.) With regard to the promulgation of new rules and regulations, the Administrative Procedure Act states: "No agency rule is valid or effective against any person or party, nor may it be invoked by the agency for any purpose, until it has been made available for public inspection and filed with the Secretary of State as required by this Act." (Ill. Rev. Stat. 1991, ch. 127, par. 1005—10 (now 5 ILCS 100/ 5—10 (West 1992)).) If an agency does not "follow the proper procedure for adoption of a rule, the rule is invalid." *Senn Park Nursing Center v. Miller* (1984), 104 Ill. 2d 169, 181, 470 N.E.2d 1029.

The Board contends that the proposed rules are irrelevant to this case because they were not in effect at the time of the challenged actions. We disagree. It is clear from the recitation of undisputed

facts that the Board was in fact acting pursuant to the proposed rules at the time it considered plaintiffs' application and issued a denial of same. Not only did the Board use the terminology "not preliminarily suitable for licensing" found only in the proposed rules, it referred to the provision in the rules pertaining to a grievance hearing in the letter of denial. Moreover, the remarks made by the Board chairman, William Kunkle, make it plain that it was the intent of the Board to act in accord with the proposed rules.

The Board further argues that regardless of the status of the proposed rules, the agency had the statutory authority to deny the plaintiffs' application and posits that "not preliminarily suitable for licensing" is analogous with "not eligible," the language used in the Riverboat Gambling Act. We agree that the Board does have the statutory authority to review, accept and deny applications for riverboat gambling licenses. An agency need not promulgate rules before it can adjudicate facts to implement its statutory mandate. (*Boffa v. Department of Public Aid* (1988), 168 Ill. App. 3d 139, 522 N.E.2d 644.) However, we do not believe these labels to be synonymous.

The Riverboat Gambling Act authorizes the Board "[t]o investigate applicants and determine the eligibility of applicants for licenses and to select among competing applicants the applicants which best serve the interests of the citizens of Illinois." (Ill. Rev. Stat. 1991, ch. 120, par. 2405(c)(1) (now 230 ILCS 10/5(c)(1) (West 1992)).) Section 7(a) of the Riverboat Gambling Act sets forth factors which automatically render an applicant "ineligible" to receive an owner's license. If an applicant is not rendered ineligible due to section 7(a) factors, it becomes part of the candidate pool from which the Board may select. Section 7(b) then lists factors which the Board must consider in determining which candidate should be selected to receive a license.[1]

Defendant contends that a failure or inability to comply with the standards required in 7(b) may render an applicant "ineligible" to

---

[1]Section 7 of the Riverboat Gambling Act provides in pertinent part:

"(a) The Board shall issue owners licenses to persons, firms or corporations which apply for such licenses upon payment to the Board of the non-refundable license fee set by the Board, upon payment of a $25,000 license fee for the first year of operation and a $5,000 license fee for each succeeding year and upon a determination by the Board that the applicant is eligible for an owners license pursuant to this Act and the rules of the Board. A person, firm or corporation is ineligible to receive an owners license if:

(1) the person has been convicted of a felony under the laws of this State, any other state, or the United States;

receive a license. We disagree. Clearly, if none of the factors listed in section 7(a) are present in an application, the applicant is "eligible" to receive a license. If the Board decides to deny an applicant a license

(2) the person has been convicted of any violation of Article 28 of the Criminal Code of 1961, or substantially similar laws of any other jurisdiction;

(3) the person has submitted an application for a license under this Act which contains false information;

(4) the person is a member of the Board;

(5) a person defined in (1), (2), (3) or (4) is an officer, director or managerial employee of the firm or corporation;

(6) the firm or corporation employs a person defined in (1), (2), (3) or (4) who participates in the management or operation of gambling operations authorized under this Act;

(7) the person, firm or corporation owns more than a 10% ownership interest in any entity holding an owners license issued under this Act; or

(8) a license of the person, firm or corporation issued under this Act, or a license to own or operate gambling facilities in any other jurisdiction, has been revoked.

(b) In determining whether to grant an owners license to an applicant, the Board shall consider:

(1) the character, reputation, experience and financial integrity of the applicants and of any other or separate person that either:

(A) controls, directly or indirectly, such applicant, or

(B) is controlled, directly or indirectly, by such applicant or by a person which controls, directly or indirectly, such applicant;

(2) the facilities or proposed facilities for the conduct of riverboat gambling;

(3) the highest prospective total revenue to be derived by the State from the conduct of riverboat gambling;

(4) the good faith affirmative action plan of each applicant to recruit, train and upgrade minorities in all employment classifications;

(5) the financial ability of the applicant to purchase and maintain adequate liability and casualty insurance;

(6) whether the applicant has adequate capitalization to provide and maintain, for the duration of a license, a riverboat; and

(7) the extent to which the applicant exceeds or meets other standards for the issuance of an owners license which the Board may adopt by rule." Ill. Rev. Stat. 1991, ch. 120, pars. 2407(a), (b) (now 230 ILCS 10/7(a), (b) (West 1992)).

under section 7(b) factors, the application is simply denied; the applicant is not rendered "ineligible" simply because other applicants may be considered more desirable or commercially attractive. Therefore, it is clear that "not preliminarily suitable for licensing" is not synonymous with "not eligible" as the latter essentially means those candidates with the section 7(a) attributes need not apply while the former is an adjudication under the section 7(b) criteria.

A finding of "not preliminarily suitable for licensing" in accordance with the proposed rules states as follows: "The administrator shall make a preliminary report to the Board concerning the suitability of an applicant for licensing, including without limitation the character and conduct of the applicant and the applicant's Key Persons, the soundness and suitability of the applicant's business plan, and the suitability of the applicant's home port." A comparison of these factors with those embodied in section 7(b) of the Riverboat Gambling Act reveals that they are in fact the very same. Those listed in the proposed rules are merely an abbreviated or shorthand version of the detailed factors set forth in the Riverboat Gambling Act.

The trial court held that the Board's finding of "preliminarily unsuitable for licensing" was actually a denial of plaintiffs' application for the license pursuant to the Riverboat Gambling Act. The court determined that the Board's finding was based on "reasons indisputably related" to the criteria contained in the statute.

We agree that the Board's finding was actually an adjudication under section 7(b) of the Riverboat Gambling Act and hold the denial of plaintiffs' application was proper as the Board acted pursuant to its statutory authority. However, the characterization of plaintiffs as "not preliminarily suitable for licensing" must be stricken as that was the standard embodied within the proposed rules and is not a part of the Riverboat Gambling Act. Therefore, the finding of "not preliminarily suitable for licensing" must be vacated as there is no provision in the statute nor were there any properly promulgated administrative rules authorizing such a finding.

In light of the foregoing, the judgment of the circuit court of Cook County is affirmed in part and reversed and vacated in part.

Affirmed in part; reversed and vacated in part.

RIZZI and CERDA, JJ. concur.