2017 IL App (3d) 150434
(Consolidated with 150451 and 150461)

Opinion filed July 19, 2017

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2017

| WINDY CITY PROMOTIONS, LLC, | ) | Appeal from the Circuit Court |
| | ) | of the 13th Judicial Circuit, |
| Plaintiff, | ) | Grundy County, Illinois. |
| | ) | |
| and | ) | |
| | ) | |
| PIER2 HOLDINGS, LLC, | ) | |
| | ) | Appeal Nos. 3-15-0434, 3-15-0451 |
| Plaintiff-Appellant, | ) | and 3-15-0461 (Consolidated) |
| | ) | Circuit No. 14-LM-133 |
| v. | ) | |
| | ) | |
| THE ILLINOIS GAMING BOARD, | ) | |
| | ) | The Honorable |
| Defendant-Appellee. | ) | Joseph P. Hettel, |
| | ) | Judge, presiding. |

JUSTICE McDADE delivered the judgment of the court, with opinion.
Justices Lytton and Carter concurred in the judgment and opinion.

**OPINION**

¶ 1     The defendant, the Illinois Gaming Board, had posted a document to its website (the Website Document) opining, *inter alia*, that certain devices called "Electronic Product Promotion Kiosks" (the Kiosks) violated section 35 of the Video Gaming Act (230 ILCS 40/35 (West 2014)). Shortly thereafter, the Gaming Board seized two of the Kiosks belonging to

plaintiff Windy City Promotions, LLC, from a health club in Morris. In response, Windy City sued the Illinois Gaming Board for declaratory relief and replevin, alleging that the Gaming Board lacked the authority both to issue the Website Document and to seize the Kiosks. Plaintiff Pier2 Holdings, LLC, which had provided the software for the Kiosks, was allowed to intervene. The plaintiffs and the Gaming Board filed motions for judgment on the pleadings. The circuit court ruled in favor of the Gaming Board on the Website Document issue and in favor of the plaintiffs on the seizure issue. Pier2 appealed, arguing that the circuit court erred when it ruled in the Gaming Board's favor regarding the Website Document. In a cross-appeal, the Gaming Board argues that the circuit court erred when it ruled that the Gaming Board lacked the authority to seize the Kiosks. We reverse.

¶ 2                                                    FACTS

¶ 3         On July 10, 2014, Windy City filed a replevin action against the Gaming Board, alleging that the Gaming Board wrongfully seized two of Windy City's Kiosks from a health club in Morris. In part, Windy City described the Kiosks as "stand-alone or table top devices featuring several buttons, a touch screen and a bill acceptor." A participant would insert paper money into the machine in exchange for a coupon that could be applied toward products sold by a particular company. The Kiosk would also automatically enter the purchaser into a sweepstakes. The purchaser could either instantly reveal the results of the sweepstakes entry or "elect to reveal the results of his or her entries more slowly via an entertaining display of the customer's choosing on the screen." The "entertaining display" was a choice of games, "which mimic the look of slots, poker, keno and bingo." Windy City alleged that the sweepstakes winners were "pre-determined by the internal promotional sweepstakes software. The customer cannot influence the sweepstakes results after the random choice is made." If the purchaser was a sweepstakes

2

winner, he or she would receive a ticket that could be exchanged for a cash prize with the location hosting the Kiosk.

¶ 4      On September 26, 2014, Windy City amended its complaint to request an expedited hearing, declaratory relief, and replevin. In addition to a request for the return of the Kiosks, Windy City sought declaratory rulings that its Kiosks were not unlawful gambling machines and that the Gaming Board lacked the authority to post the Website Document. The amended complaint contained a new description of the Kiosks, but it was substantially similar to the description given in the original complaint.

¶ 5      The Website Document referenced by the complaint was dated December 5, 2013, and titled "The legality of Electronic Promotion Sweepstakes Kiosks in Illinois." In full, it stated the following:

> "The Illinois Gaming Board (IGB) has become aware that Electronic Product Promotion Sweepstakes Kiosks (Devices) have entered the Illinois market. These Devices allow a patron to insert cash and purchase credits in addition to receiving a coupon that can be redeemed via a website. The patron is then able to wager credits by playing electronic sweepstakes games that look like casino style slots. As credits are won or lost, they are represented on the screen by a running credits total. To cash out, the patron presses a button that removes and resets the credits shown on the screen and prints the total credits on a ticket/coupon. That ticket/coupon can be redeemed for cash at the location.

These Devices violate Section 35 of the Video Gaming Act (VGA), which provides that it is a felony to own, operate, possess or permit to be kept 'any device that awards credits and contains a circuit, meter, or switch capable of removing and recording the removal of credits when the award of credits is dependent upon chance.' 230 ILCS 40/35(a). Effective January 1, 2014, Public Act 098-0111 amends section 35(a) of the VGA by adding the following language:

> Nothing in this Section shall be deemed to prohibit the use of a game device only if the game device is used in an activity that is not gambling under section (b) of Section 28-1 of the Criminal Code of 2012.

The Criminal Code codified the common law definition of gambling, which has three elements: (1) consideration or purchase, (2) chance, and (3) opportunity for a prize. If any one of these elements is missing, there is no illegal gambling. Thus, in order for these Devices to not constitute illegal gambling, both the Criminal Code and the Illinois Prizes and Gifts Act dictate that <u>no</u> purchase be required. 815 ILCS 525/20, 720 ILCS 5/28-2(b)(13) [*sic*].

Promoters of these Devices (much like electronic raffle machines, internet cafes or Lucky Shamrock Vending Machines), attempt to exploit what they deem a 'legal loophole' in Illinois

4

gambling laws by arguing that the purchase paid into the kiosks is for a coupon and <u>not</u> for the wagering of credits. This argument has been universally rejected in jurisdictions across the country. [Footnote 1: Courts from New York, Indiana, Ohio, Alabama, North Dakota, Florida, Hawaii, North Carolina all have rejected this argument.] Additionally, a promotion under the Illinois Prizes and Gifts Act that allows the opportunity for an alternate means of entry ('no purchase necessary') does not cancel out the element of consideration or purchase. The obvious purpose of these Devices is to offer a chance to win a prize for consideration. Finally, the Illinois Prizes and Gifts Act also requires that written promotional offers must contain all nine (9) elements outlined in a clear and conspicuous statement at the onset of the offer. These Devices might not meet all nine elements and accordingly would not comply with the Illinois Prizes and Gift [*sic*] Act.

It is the opinion of the IGB that Electronic Product Promotion Sweepstakes Kiosks fit the definition of a gambling device. These devices will not be licensed by the IGB. An owner of a Licensed Video Gaming Location found to be in possession of such a Device could be charged with a felony under the Video Gaming Act. At a minimum, possession of such a Device will jeopardize suitability for initial or continued licensure."

5

¶ 6          In response to Windy City's amended complaint, the Gaming Board filed an answer, affirmative defense, and counterclaim, which, in part, sought a ruling that the Kiosks were illegal and an injunction prohibiting Windy City from distributing the Kiosks. In part, the Gaming Board's pleading alleged that the Kiosks in question had been seized by "IGB special agents" and that "IGB special agents are either employed by the Illinois State Police pursuant to [section 5(c)(20.7) of the Riverboat Gambling Act (230 ILCS 10/5(c)(20.7) (West 2014))] or are otherwise considered a 'local authority' as construed under [section 28-5 of the Criminal Code of 2012 (720 ILCS 5/28-5 (West 2014))]."

¶ 7          On November 7, 2014, Pier2 was allowed to intervene.

¶ 8          On November 19, 2014, Windy City and Pier2 filed a motion for judgment on the pleadings. On February 27, 2015, the Gaming Board filed a responsive pleading in which it specifically alleged, for the first time, that the Kiosks had been seized by three Illinois State Police officers assigned to the Gaming Board. The officers' affidavits were attached to the filing.

¶ 9          On February 10, 2015, the circuit court held a hearing on the outstanding matters, and it issued its written decision on March 13, 2015. First, the court ruled that the Gaming Board lacked the authority to seize the Kiosks, finding (1) the Gaming Board was not authorized by section 28-5 of the Criminal Code of 2012 (720 ILCS 5/28-5 (West 2014)) to conduct the seizure, as that section authorized only the Department of State Police and municipal or local authorities to take such action; (2) the seizure powers granted to the Gaming Board in the Riverboat Gambling Act and the Video Gaming Act were limited to activities connected with riverboat gambling and licensed video gambling terminals; and (3) the seizure powers granted to the Gaming Board by section 35 of the Video Gaming Act referred back to section 28-5 of the

6

Criminal Code of 2012, which gives seizure power exclusively to the Department of State Police or local law enforcement.

¶ 10     Second, the court ruled, without further clarification, that the plaintiffs had failed to convince the court that it had the authority to enjoin the Gaming Board from posting documents to its website. Further, the court stated that it "makes no findings as to Plaintiffs' contention that the [Gaming Board] exceeded its statutory authority in its publication and dissemination of the legal Opinion concerning Electronic Product Promotion Kiosks."

¶ 11     Third, the court struck the affidavits of the officers that the Gaming Board had filed with its February 27, 2015, pleading.

¶ 12     Both parties filed motions for partial reconsideration of the circuit court's judgment.[1] In their motion, the plaintiffs also sought leave to voluntarily dismiss their declaratory judgment claim regarding the legality of the Kiosks. The plaintiffs argued that because the court had ruled that the Gaming Board lacked the authority to seize the Kiosks, it was not the proper party to sue regarding the issue.

¶ 13     At the hearing on the motions, the plaintiffs argued that the Website Document constituted administrative rulemaking, whereas the Gaming Board argued that it did not. At the close of the hearing, the circuit court denied both parties' motions and granted the plaintiffs' request for leave to voluntarily dismiss the Kiosk-legality issue. The court decided to consider the affidavits of the three Illinois State Police officers assigned to the Gaming Board, but the court stated that its consideration of the affidavits did not change its March 13, 2015, ruling. The court did modify its March 13 ruling, however, to clarify that it had ruled in favor of the Gaming Board on the Website Document issue. In that regard, the court stated, "I'm not saying they have

---

[1]Notably, during the pendency of the motions for partial reconsideration, the Gaming Board told the circuit court that it had returned the Kiosks to Windy City.

the authority to make the opinion or the opinion is correct, I'm saying that I don't have the authority to tell them what they can and cannot put on their website based on the pleadings."

¶ 14     Windy City, Pier 2, and the Gaming Board all appealed. Windy City has since dropped its appeal, but they have filed a responsive brief, which we have considered in resolving this appeal.

¶ 15                                    ANALYSIS

¶ 16     Initially, we emphasize that the legality of the Kiosks is not at issue in this appeal. We also note that the Gaming Board has returned the Kiosks to Windy City. However, we believe that neither the absence of the Kiosk-legality issue nor the return of the Kiosks precludes consideration of the merits of the parties' arguments. The questions raised in the appeal and cross-appeal relate only to the authority of the Gaming Board to take the actions in question—namely, whether it could issue the Website Document and seize the Kiosks from the Morris health club. There is nothing in the Riverboat Gambling Act, Video Gaming Act, or section 28-5 of the Criminal Code of 2012 that requires a pre-seizure judicial determination that a particular device is, in fact, an illegal gambling device. See 230 ILCS 10/1 *et seq.* (West 2014); 230 ILCS 40/1 *et seq.* (West 2014); 720 ILCS 5/28-5 (West 2014). Indeed, requiring such a determination would seem to run afoul of these statutes. See, *e.g.*, 230 ILCS 10/2(b) (West 2014) (noting that the provisions in the Riverboat Gambling Act "are designed to *strictly regulate* the facilities, persons, associations and practices related to gambling operations pursuant to the police powers of the State, including comprehensive law enforcement supervision" (emphasis added)); 720 ILCS 5/28-5(c) (West 2014) (providing for a forfeiture hearing, when criminal charges have been filed, to determine whether a device constituted a gambling device at the time of seizure); 720 ILCS 5/28-5(d) (West 2014) (listing available procedures when criminal charges have not been filed, or when the charges were permanently terminated or indefinitely discontinued;

8

procedures include persons having property interests in the seized device commencing civil proceedings). In sum, we conclude that controversies still exist in this appeal and cross-appeal, despite the absence of the Kiosk-legality issue and the fact that the Gaming Board has returned the Kiosks to Windy City.

¶ 17     This appeal and cross-appeal involve the circuit court's rulings on a motion for judgment on the pleadings. A motion for judgment on the pleadings is similar to a motion for summary judgment except that the resolution of the motion is limited to the pleadings. *Fagel v. Department of Transportation*, 2013 IL App (1st) 121841, ¶ 26. When ruling on a motion for judgment on the pleadings, a circuit court " 'must consider only those facts apparent from the face of the pleadings, judicial admissions in the record and matters subject to judicial notice.' " *Id.* (quoting *Illinois ToolWorks, Inc. v. Commerce & Industry Insurance Co.*, 2011 IL App (1st) 093084, ¶ 16). The moving party admits all well-pled facts in the nonmoving party's pleading and the reasonable inferences from those facts. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010). "Judgment on the pleadings is properly granted if the pleadings disclose no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Id.* When faced with a challenge to a circuit court's decision on a motion for judgment on the pleadings, our review is *de novo*. *Fagel*, 2013 IL App (1st) 121841, ¶ 26.

¶ 18                                                    I. APPEAL

¶ 19     In its appeal, Pier2 argues that the circuit court erred when it ruled in the Gaming Board's favor regarding the Website Document. Variously, Pier2 claims that (1) the Gaming Board exceeded its authority when it posted the Website Document, (2) the Gaming Board does not have the statutory authority to issue "advisory legal opinions," and (3) the Gaming Board should

be enjoined from unauthorized rulemaking. The Gaming Board responds briefly that because it has since removed the Website Document from its website, Pier2's appeal is moot.

¶ 20    An appeal can become moot when an intervening event has transpired that prevents the reviewing court's ability to grant effectual relief. *In re Donald L.*, 2014 IL App (2d) 130044, ¶ 18. Generally, courts will not decide moot questions. *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). However, exceptions exist that allow for the review of an otherwise moot question. *In re Kurtis C.*, 2015 IL App (3d) 130605, ¶ 16. One such exception is the "capable of repetition yet evading review exception." (Internal quotation marks omitted.) *Id.* "The 'capable of repetition yet evading review' exception requires the complaining party to show that (1) the challenged action is too short in duration to be fully litigated prior to its cessation, and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* ¶ 18 (quoting *In re Vanessa K.*, 2011 IL App (3d) 100545, ¶ 14).

¶ 21    We believe that this issue qualifies for the "capable of repetition yet evading review" exception to the mootness doctrine. First, the challenged action was too short because while the Gaming Board's action of posting the Website Document had no duration, the Gaming Board decided to pull the document from its website. Second, the Gaming Board could repost the Website Document and thereby resurrect the same controversy. It would be inherently unfair to allow the Gaming Board to manipulate the process and avoid review of this issue through the simple removal of a disputed document from its website. Accordingly, we reject the Gaming Board's mootness claim.

¶ 22    In addressing the merits of Pier2's argument, we examine the Gaming Board's administrative authority. The Gaming Board is an administrative agency created by the Riverboat Gambling Act under the following terms:

10

"There is hereby established the Illinois Gaming Board, which shall have the powers and duties specified in this Act, and all other powers necessary and proper to fully and effectively execute this Act for the purpose of administering, regulating, and enforcing the system of riverboat gambling established by this Act. Its jurisdiction shall extend under this Act to every person, association, corporation, partnership and trust involved in riverboat gambling operations in the State of Illinois." 230 ILCS 10/5(a)(1) (West 2014).

The Gaming Board's jurisdiction also extends to matters under the Video Gaming Act (230 ILCS 40/78(a) (West 2014)). Both the Riverboat Gambling Act and the Video Gaming Act contain provisions that extend their provisions to each other, unless two provisions conflict (230 ILCS 10/24 (West 2014); 230 ILCS 40/80 (West 2014)).

¶ 23        Among the powers granted to the Gaming Board is the power to adopt administrative rules. 230 ILCS 10/5(b)(3) (West 2014) (stating that the Gaming Board's duties include "promulgat[ing] such rules and regulations as in its judgment may be necessary to protect or enhance the credibility and integrity of gambling operations authorized by [the Riverboat Gambling Act] and the regulatory process hereunder"); 230 ILCS 40/78(a)(3) (West 2014) (stating that the Gaming Board's powers include "adopt[ing] rules for the purpose of administering the provisions of [the Video Gaming Act] and to prescribe rules, regulations, and conditions under which all video gaming in the State shall be conducted"). Pursuant to section 78(b) of the Video Gaming Act, the legislature has mandated that when the Gaming Board seeks to adopt a rule, it must follow the procedures for emergency rulemaking set forth in section 5-45

11

of the Illinois Administrative Procedure Act (5 ILCS 100/5-45 (West 2014)). 230 ILCS 40/78(b) (West 2014).

¶ 24        In relevant part,[2] section 1-70 of the Illinois Administrative Procedure Act defines a "rule" as an "agency statement of general applicability that implements, applies, *interprets*, or prescribes law or policy." (Emphasis added.) 5 ILCS 100/1-70 (West 2014). "An interpretive rule is any rule an agency issues without exercising delegated legislative power to make law through rules.' " *United Consumers Club, Inc. v. Attorney General*, 119 Ill. App. 3d 701, 704 (1983) (quoting 2 Kenneth Culp Davis, Administrative Law Treatise § 7:8, at 36 (2d ed. 1979)). More specifically, an interpretive rule has been described as "one that is issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers. [Citation.] An interpretive rule thus represents the agency's reading of statutes and rules rather than an attempt to make new law or modify existing law. [Citation.]" (Internal quotation marks omitted.) *Guerra v. Shinseki*, 642 F.3d 1046, 1051 (Fed. Cir. 2011). Interpretive rules are not law and are not binding on the courts. *United Consumers Club, Inc.*, 119 Ill. App. 3d at 704-05 (quoting *Joseph v. United States Civil Service Comm'n*, 554 F.2d 1140, 1154 n.26 (D.C. Cir. 1977)).

¶ 25        Based on the above-cited authority, it is clear that the Gaming Board is empowered to adopt interpretive rules; *i.e.*, rules that represent the Gaming Board's reading of statutes it administers. See *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 362 Ill. App. 3d 652, 656 (2005) (holding that "[a]n agency may adopt a rule and regulate an activity only insomuch as a statute empowers the agency to do so"); see also *Metropolitan School District v. Davila*, 969 F.2d 485, 490 (7th Cir. 1992) ("All agencies charged with enforcing and administering a statute

---

[2]Enumerated exceptions to the definition of a rule have been omitted because they do not apply to this case.

have 'inherent authority to issue interpretive rules informing the public of the procedures and standards it intends to apply in exercising its discretion.' " (quoting *Production Tool Corp. v. Employment & Training Administration*, *United States Department of Labor*, 688 F.2d 1161, 1166 (7th Cir. 1982))). The Website Document, at least in part, contained the Gaming Board's interpretation of section 35(a) of the Video Gaming Act (230 ILCS 40/35(a) (West 2014)) in relation to the Kiosks. Additionally, to the extent that the Website Document also contained a policy statement—*i.e.*, the Gaming Board's future intentions—the Illinois Administrative Procedure Act's definition of a rule includes policy statements (5 ILCS 100/1-70 (West 2014)) and therefore empowers the Gaming Board to issue policy statements.

¶ 26 We acknowledge that in the circuit court, the parties and the court itself struggled to classify the Website Document. We also note that the Gaming Board itself argued during the reconsideration hearing that the Website Document was merely an "opinion" and not an attempt at rulemaking. However, simply because the Gaming Board argued as such does not change the fact that the Website Document was interpretive and policy-setting in nature. As we have stated above, the Gaming Board is authorized to adopt interpretive rules and policy statements. See 230 ILCS 10/5(b)(3) (West 2014); 230 ILCS 40/78(a)(3) (West 2014); 5 ILCS 100/1-70 (West 2014). Therefore, we conclude that the Gaming Board had the authority to *attempt* to adopt the contents of the Website Document.

¶ 27 The plaintiffs further contend that if the Gaming Board had the authority to issue the Website Document, it did not follow the appropriate rulemaking procedures. We agree. Our review of the pleadings filed in this case reveal nothing to indicate that the Gaming Board followed the appropriate rulemaking procedures when it issued the Website Document. In fact,

13

as previously noted, the Gaming Board took the position in the circuit court that the Website Document did not even constitute a rule.

¶ 28    However, we disagree with the plaintiffs that the appropriate remedy for the Gaming Board's failure to follow the appropriate rulemaking procedures is to enjoin the Gaming Board. The appropriate remedy is for this court simply to strike down the attempted rule. See *Senn Park Nursing Center v. Miller*, 104 Ill. 2d 169, 181 (1984) (holding that "[s]ince we believe that the amended procedure was a rule within the meaning of the Illinois Administrative Procedure Act and since the agency did not, and does not contend that it did, follow the proper procedure for adoption of a rule, the rule is invalid"); see also 5 ILCS 100/5-10(c) (West 2014); *Walk v. Department of Children & Family Services*, 399 Ill. App. 3d 1174, 1184 (2010) ("Rules not properly promulgated are invalid, not effective against any person or entity, and may not be invoked by an administrative agency for any purpose. [Citation.]" (Internal quotation marks omitted.); *Riverboat Development Corp. v. Illinois Gaming Board*, 268 Ill. App. 3d 257, 259 (1994) ("If an agency does not 'follow the proper procedure for adoption of a rule, the rule is invalid.' [Citation.]"). Pursuant to the foregoing authority and analysis, we hold that the Gaming Board had authority to issue an interpretive rule and to post it but that, because it failed to follow the appropriate rulemaking procedures, the attempted rule is invalid. To the extent that the circuit court made a contrary finding, its judgment is reversed.

¶ 29                                II. CROSS-APPEAL

¶ 30    In its cross-appeal, the Gaming Board argues that the court erred when it ruled that the Gaming Board lacked the authority to seize the Kiosks from a health club in Morris. For the following reasons, we agree.

14

¶ 31     The legislature granted sweeping power to the Gaming Board under the Riverboat Gambling Act. Section 2 states the following regarding legislative intent:

> "(a) This Act is intended to benefit the people of the State of Illinois by assisting economic development and promoting Illinois tourism and by increasing the amount of revenues available to the State to assist and support education.
>
> (b) While authorization of riverboat gambling will enhance investment, development and tourism in Illinois, it is recognized that it will do so successfully only if public confidence and trust in the credibility and integrity of the gambling operations and the regulatory process is maintained. Therefore, regulatory provisions of this Act are designed to strictly regulate the facilities, persons, associations and practices related to gambling operations pursuant to the police powers of the State, including comprehensive law enforcement supervision." 230 ILCS 10/2 (West 2014).

To effectuate these goals, the Riverboat Gambling Act created the Gaming Board, "which shall have the powers and duties specified in this Act, and all other powers necessary and proper to fully and effectively execute this Act for the purpose of administering, regulating, and enforcing the system of riverboat gambling established by this Act." 230 ILCS 10/5(a)(1) (West 2014). Further, the Gaming Board's "jurisdiction shall extend under this Act to every person, association, corporation, partnership and trust involved in riverboat gambling operations in the State of Illinois." *Id.*

15

¶ 32    The Video Gaming Act also grants sweeping power to the Gaming Board. Section 78 employs language similar to that used in the Riverboat Gambling Act in describing the responsibilities of the Gaming Board regarding the regulation of video gaming operations. 230 ILCS 40/78(a)(1) (West 2014).

¶ 33    As pointed out in our analysis of Pier2's appeal, both the Riverboat Gambling Act and the Video Gaming Act contain provisions that extend their provisions to each other, unless two provisions conflict (230 ILCS 10/24 (West 2014); 230 ILCS 40/80 (West 2014)). This extension of provisions is especially significant for the purposes of this case due to the provisions related to seizure powers granted to the Gaming Board.

¶ 34    Both the Riverboat Gambling Act and the Video Gaming Act grant the Gaming Board the power to appoint investigators with the rights and powers of peace officers, which include the power to conduct investigations, searches, seizures, and arrests. 230 ILCS 10/5(c)(20.6) (West 2014); 230 ILCS 40/79 (West 2014). However, the power of these appointed investigators is limited. The Riverboat Gambling Act limits this power essentially "to offenses or violations occurring or committed on a riverboat or dock" (230 ILCS 10/5(c)(20.6) (West 2014)), and the Video Gaming Act limits it essentially to the licensing and supervising of video gaming operations (230 ILCS 40/78 (West 2014)).

¶ 35    Another significant provision for our purposes in section 5(c)(20.7) of the Riverboat Gambling Act, which allows the Gaming Board to contract with the Department of State Police and the Department of Revenue to use personnel from those agencies to aid the Gaming Board in carrying out its duties. 230 ILCS 10/5(c)(20.7) (West 2014). Personnel from both agencies are granted the power "to conduct investigations, searches, seizures, arrests, and other duties imposed under this Act and to exercise all of the rights and powers of peace officers." However,

16

section 5(c)(20.7) limits the powers of the Department of Revenue personnel (called "investigators") essentially to "offenses or violations occurring or committed on a riverboat or dock," whereas there is *no* such limitation placed on personnel from the Department of State Police (called "qualified State police officers" rather than "investigators"). *Id.*

¶ 36        This distinction is key because, historically, the power to seize unlawful gambling devices has rested with the Department of State Police or local authority with jurisdiction over the location in which the devices are seized. 720 ILCS 5/28-5(a) (West 2014). Section 28-5(a) of the Criminal Code of 2012 states:

> "(a) Every device designed for gambling which is incapable of lawful use or every device used unlawfully for gambling shall be considered a 'gambling device', and shall be subject to seizure, confiscation and destruction by the Department of State Police or by any municipal, or other local authority, within whose jurisdiction the same may be found. As used in this Section, a 'gambling device' includes any slot machine, and includes any machine or device constructed for the reception of money or other thing of value and so constructed as to return, or to cause someone to return, on chance to the player thereof money, property or a right to receive money or property. With the exception of any device designed for gambling which is incapable of lawful use, no gambling device shall be forfeited or destroyed unless an individual with a property interest in said device knows of the unlawful use of the device." 720 ILCS 5/28-5(a) (West 2014).

17

¶ 37    A review of the Riverboat Gambling Act and the Video Gaming Act reveals that while the legislature appears to have created a means for the Department of State Police and Gaming Board to collaborate in enforcing the state's gambling laws (*i.e.*, 230 ILCS 10/5(c)(20.7) (West 2014)), the legislature did not intend to change the historical locus of power to seize unlawful gambling devices except in the very limited circumstances provided by those particular Acts. In fact, to the extent that the Gaming Board is authorized to seize unlicensed gambling devices, that power relates back to section 28-5 of the Criminal Code of 2012. Section 35(a) of the Video Gaming Act provides, in relevant part:

> "Every gambling device found in a licensed establishment, licensed truck stop establishment, licensed fraternal establishment, or licensed veterans establishment operating gambling games in violation of this Act shall be subject to seizure, confiscation, and destruction as provided in Section 28-5 of the Criminal Code of 2012. *** No person may own, operate, have in his or her possession or custody or under his or her control, or permit to be kept in any place under his or her possession or control, any device that awards credits and contains a circuit, meter, or switch capable of removing and recording the removal of credits when the award of credits is dependent upon chance.
>
> Nothing in this Section shall be deemed to prohibit the use of a game device only if the game device is used in an activity that is not gambling under subsection (b) of Section 28-1 of the Criminal Code of 2012.

18

A violation of this Section is a Class 4 felony. All devices that are owned, operated, or possessed in violation of this Section are hereby declared to be public nuisances and shall be subject to seizure, confiscation, and destruction as provided in Section 28-5 of the Criminal Code of 2012." 230 ILCS 40/35(a) (West 2014).

¶ 38    The import of these statutes for this case is that the seizure of the Kiosks—*i.e.*, unlicensed devices—from the health club in Morris—*i.e.*, an unlicensed establishment—was lawful only if had it been conducted by the Department of State Police or local authority. See 230 ILCS 10/5(c)(20.7) (West 2014); 230 ILCS 40/35(a) (West 2014). The Gaming Board's pleadings stated that it contracts with the Department of State Police for the use of its police officers, and there is nothing in the pleadings to indicate that those officers failed to conduct the seizure of the Kiosks in accordance with section 28-5 of the Criminal Code of 2012. Under these circumstances, the pleadings indicate that the seizure was a valid exercise of administrative authority. Accordingly, we hold that the circuit court erred when it ruled that the seizure of the Kiosks was unauthorized.

¶ 39                                    CONCLUSION

¶ 40    For the foregoing reasons, we hold that (1) the Gaming Board has the authority to adopt interpretive rules and policy statements and to post them to its website, but that it failed to follow the appropriate procedures for doing so when it composed and posted the Website Document and (2) the circuit court erred when it ruled that the Gaming Board lacked the authority to conduct the seizure of the Kiosks. Accordingly, the judgment of the circuit court of Grundy County is reversed.

¶ 41    Reversed.